2 Ill. App.3d 307 (1971)
276 N.E.2d 72
THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v.
LAWRENCE C. McLEAN, Defendant-Appellant.
No. 53736.
Illinois Appellate Court  First District.
October 27, 1971.
*308 Gerald W. Getty, Public Defender, of Chicago, (Fred Shandling, James J. Doherty, and Theodore A. Gottfried, Assistant Public Defenders, of counsel,) for appellant.
Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and George Pappas, Assistant State's Attorneys, of counsel,) for the People.
Reversed and remanded.
Mr. JUSTICE DIERINGER delivered the opinion of the court:
This is an appeal from a judgment entered in the circuit court of Cook County. The defendant, Lawrence McLean, was indicted for the murder of Loran Overturf and the aggravated battery of Albert Tulo. In a jury trial he was found not guilty of aggravated battery, but guilty of voluntary manslaughter in the death of Overturf and was sentenced to a term of ten to twenty years in the Illinois State Penitentiary.
The issues on appeal are whether the trial court unreasonably restricted cross-examination, whether the jury was improperly informed that defendant and a defense witness had asserted their constitutional right to remain silent while in custody, whether the conduct of the State's *309 Attorney created the impression that defense counsel was hiding unfavorable evidence, and whether the State's closing argument was prejudicial.
Albert Tulo testified that on May 4, 1967, he was in the company of the deceased and three other boys standing in the vicinity of 18th Street and Wolcott when James Gillinger approached them on a bicycle. Gillinger called out the names of the deceased and Tulo, then the defendant and Lowell Davis got out of a car and approached the group. The defendant asked which one of the five had been "messing with one of my boys?" He was referring to an incident two weeks earlier when Tulo had pointed a cap pistol at Davis.
The deceased and Tulo began advancing and McLean pulled a pistol. The deceased twice dared the defendant to shoot and continued to advance and shout obscenities at him. As the defendant backed into the street one shot was fired and Overturf clutched his chest, then three more shots were fired. The defendant testified the first shot was fired accidentally when he backed into a parked car. He said he fired the other shots because he thought the deceased was reaching inside his jacket for a weapon. Tulo, however, testified that McLean was in the middle of the street when the first shot was fired.
The defendant contends he was unduly restricted from impeaching the testimony of Albert Tulo. On direct examination Tulo testified that two weeks prior to the shooting he was in a skating rink with the deceased. At that time he took a toy gun from a young boy, entered the washroom where Lowell Davis was present, pointed the gun at Davis and pulled the trigger. He said he was "fooling around" and that they both laughed about the incident. On cross-examination, defense counsel made the following references to Tulo's testimony before the Grand Jury.
"Q. Do you remember, Albert, testifying before the grand Jury of Cook County, do you remember that, Albert?
A. Yes, sir.
Q. All right, I'd like to ask you if you remember this statement.
"Q. Why were you carrying the cap pistol, why?
A. Why?
Q. Yes."
Your answer was this: "Well, Loran had it and he was in the rink and we were fooling around with it." Now, do you remember being asked that question by the State's Attorney in the Cook County Grand Jury proceedings?
A. No, I don't.
Q. Do you remember giving that answer?

*310 A. No, I don't.
Q. Isn't that your answer?
A. I don't remember."
 1 At this time defense counsel sought to once again read the answer the witness gave at the Grand Jury proceedings. The judge disallowed this because he had already read the answer once. The defendant maintains the impeachment of the witness was not complete because the witness said only that he did not remember and was not then confronted with the prior testimony. He maintains he should have been allowed to bring in the court reporter to testify from his notes as to the statement made to the Grand Jury. In People v. Dixon (1963), 28 Ill.2d 122, the defendant attempted to lay a foundation for impeachment of a State's witness on the theory that the witness had testified differently at an earlier trial which ended in a mistrial. The Supreme Court of Illinois held that the trial court erred in requiring defense counsel to repeat specific questions and answers from the former trial testimony where the defendant was unable to obtain a free transcript of the former trial. The court stated:
"However, counsel did not have a transcript of the testimony at the first trial and the court sustained objections to all questions as to whether the witness in question had testified differently at the first trial, on the ground that the only proper method of laying a foundation for impeachment was to read the exact question and answer made at the former trial. It is true that this method is customary and proper. * * * After laying the foundation the impeachment could have been completed, in the absence of a transcript, by calling the reporter at the former trial to prove the prior inconsistent testimony."
It thus appears the trial judge was correct, and any repetition of the question and answer would be unwarranted.
 2-4 The defendant next asserts he was denied a fair trial when the State introduced evidence that he and Lowell Davis repeatedly asserted their constitutional rights to remain silent. In Miranda v. Arizona, 384 436, it was held that no adverse inferences can be drawn from an accused's refusal to make a statement. But these rights are personal and extend only to defendants. In this case the Miranda rights of Lowell Davis cannot be asserted by the defendant. (People v. Danham (1968), 41 Ill.2d 1; People v. Hudson (1970), 46 Ill.2d 177.) Therefore, any prejudicial inferences which may be drawn from Davis' desire to remain silent may be considered by the jury in assessing the guilt or innocence of the defendant. However, there were persistent references to the fact that McLean, too, had claimed his right to remain silent. Even the repeated objections of counsel and adverse rulings of the court cannot be *311 considered sufficient to protect the defendant's case from being prejudiced.
The defendant claims he was denied a fair trial when the State offered into evidence a letter written by him which the State alleges was inconsistent with his testimony on the stand. The letter was written by the defendant to Albert Tulo while he was in custody and, in essence, stated that the deceased would not have been shot if he had not placed his hand in his pocket. The defendant first denied and then admitted writing the letter.
On cross-examination the defendant testified the first shot was fired accidentally as a result of backing into a car. The State deemed this testimony to be inconsistent with the contents of the letter, which indicated he shot the deceased voluntarily though in self-defense, and tried to have the letter admitted into evidence to impeach the defendant. The State apparently chose to ignore the defendant's statement on direct that although the first shot was fired accidentally, the others were fired in self-defense when he thought he saw the deceased attempt to pull out a weapon. When the defense attorney objected to the line of questioning, the contents of the letter were discussed in chambers. The court determined the letter was not relevant and would only be impeaching if the defendant was claiming accident. When the defendant was again cross-examined before the jury he stated the first bullet was discharged accidentally. He was not asked about the other shots. The State again attempted to introduce the letter, and the defense attorney was required to object again, and the objection was sustained.
 5 The following day the defense attorney moved the court to allow the entire letter into evidence on the court's motion because the jury may speculate as to the contents of the letter and may believe the contents of the letter were harmful to the defendant's case. The judge refused this motion and allowed his previous ruling to stand. The denial of this motion was error, because at this point both sides wanted the letter admitted into evidence and for good reasons. In People v. Dukes (1957), 12 Ill.2d 334, the State's Attorney made an insinuation to the jury about the defendant's criminal record. The Supreme Court stated:
"In a sense, it was more damaging than proof of other specific criminal offenses, because it left the jury to speculate upon the insinuation that the defendant had a prior record, without stating what it was."
There was no way of knowing what the jury thought about the letter not being admitted into evidence or how much damage was done thereby.
The defendant next asserts the closing argument for the State was prejudicial because it informed the jury of the existence of the decedent's family. In his closing argument the State's Attorney said:

*312 "Now ladies and gentlemen, we understand that you have a very solemn duty to perform. We understand without doubt that you are going to be sympathetic because this is a youthful person, no question about it, but we ask you, ought you not also to be sympathetic for the deceased who was also a young person? Ought you not be sympathetic for the family of Loran Overturf, who had a right to have this son live a normal and full and healthy life? This boy was also young. He was also unarmed at the time that he was shot down by this punk.
Mr. Davis: Objection, your Honor, and I would like to speak to the court at sidebar.
Mr. Magnes: That's not necessary, that's a fair comment.
Mr. Davis: I am asking the Court to declare a mistrial.
The Court: Motion for a mistrial is denied. You may proceed."
 6 In People v. Dukes, 12 Ill.2d 334, the son of the deceased testified that he was a son and that he lived with his mother, two sisters and a brother. The court stated:
"Such evidence has no relation to the guilt or innocence of the accused or the punishment to be administered to him, and is ordinarily calculated only to prejudice the defendant with the jury. Where it is not elicited incidentally, but is presented in such manner as to cause the jury to understand that it is a matter material and proper to be proved, its admission is prejudicial error. (Filippo v. People, 224 Ill. 212.) * * * We must assume that the jury considered it as material, since the court overruled objections to both the evidence and the argument. Its only purpose was to prejudice the defendant in the eyes of the jury and to arouse in them anger, hate and passion. We cannot speculate as to the extent to which the jury was influenced by this incompetent evidence and inflammatory argument."
 7 The State maintains that the reference was not so prejudicial to the defendant as to deprive him of a fair trial, and it cites People v. Vasquez (1969), 26 Ill.2d 190. In Vasquez, the court held that testimony in that case was only incidental and was not of an inflammatory nature. The court also noted that the questioning was brief and cursory and was abandoned upon defense counsel's objection, with an admonition from the court not to continue. Here, there was an objection which was denied, thus allowing the jury to believe that it could be considered in reaching a verdict. In Williams, the court stated:
"While it is improper for a State's Attorney to make statements the only effect of which is to inflame the passions or develop the prejudices of the jurors without throwing light on the issues, he may nevertheless draw inferences unfavorable to defendant if based on the evidence, and he may reflect unfavorably on the accused and denounce his wickedness *313 even to the point of invective. Further, it is always proper for the prosecutor to dwell on the evil results of crime and to urge fearless administration of the law. [Citations.]"
 8 Here, the effect was to inflame the passions of the jurors. The statement did not merely draw inferences but informed the jury of the existence of the family of the deceased, a fact not material to the question of guilt or innocence. The statement not only informed the jury of the existence of the family but presented it in a manner which could be related to the question of the defendant's culpability and asked the jury to be sympathetic for the family.
 9 In addition, the State's Attorney referred to the defendant as a "gang chief," and the Villa Lobos as a "gang." There is no evidence to support these statements. Although the defendant was wearing a Villa Lobos club sweater at the time of the incident, and there was contradictory testimony about whether he was a member of the organization, there is no evidence that it was in any sense a "gang." All witnesses referred to the organization as a club, and the only testimony to the contrary was by a policeman who stated he had occasion to call the Chicago Police Department Gang Youth Intelligence. There was an objection to this in court and a motion for a mistrial made in chambers, which was denied.
For these reasons, we think the defendant was denied a fair trial, and the judgment of the circuit court of Cook County is reversed and the cause remanded for a new trial.
Reversed and remanded.
ADESKO, P.J., and BURMAN, J., concur.