THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN BITAKIS, Defendant-Appellant.

(No. 55005; ▮▮▮▮▮▮▮▮▮▮▮)

First District—October 24, 1972.

Harry J. Busch and Patrick A. Tuite, both of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Themis N. Karnezis, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

Defendant was charged with murder. A jury found him guilty. He was sentenced to serve 15 to 25 years. The issue dispositive of this appeal is whether he was deprived of a fair trial by the closing argument an assistant State's Attorney made to the jury.

On March 4, 1969, because they were estranged, defendant's wife, Eugenia Bitakis, and their two children were living with her mother in Chicago. At about 5:00 A.M., according to the mother, Matani Lalagos, defendant telephoned the home and told Mrs. Lalagos, "You took her [referring to his wife, Eugenia], I shall kill her." Eugenia came to the telephone and spoke with defendant. A short time later, Mrs. Lalagos left for work. Her son, Thomas Lalagos, Eugenia and the two children were at home.

It was Thomas Lalagos' testimony that at approximately 10:30 A.M. he heard a knock on the door. Eugenia answered. He heard Eugenia ask if the person outside had a gun. Thomas heard defendant answer, "No, I don't have a gun, I just want to talk with you." Eugenia let defendant in the house. He sat in a chair in the living room and he and Eugenia began to talk about their marital difficulties. Then, in the midst of a heated exchange, defendant stood up, reached into his coat and pulled out a gun. Thomas Lalagos said that when he saw the gun, "I started walking upstairs in a fast fashion." As he did, he heard his sister cry out, "No, no, please don't, John." Then Thomas heard three shots. From a bedroom window upstairs, he saw defendant leave the house, walk to his car and drive away. When he returned to the living room, he found Eugenia on the floor, face down. She was taken to a nearby hospital where she was pronounced dead. Examination disclosed she had three wounds, one in the arm and two in the back. A pathologist gave his opinion that the cause of Eugenia Bitakis' death was "*   *   *   a bullet wound of the chest—heart."

It was defendant's testimony that he telephoned the Lalagos' home early the morning of March 4, 1969, talked with his mother-in-law and with his wife Eugenia but did not threaten her. He went to see his wife later that morning to talk with her and bring her home. When he arrived at his mother-in-law's house at about 10:30 A.M., Thomas Lalagos let him in. His wife did not ask him about a gun. However, he had a gun in his pocket because, being a restaurant owner, he had a large sum of money he was going to deposit. He sat on a sofa; he and his wife discussed their troubles. His children were playing nearby. Then, according to defendant, Thomas Lalagos said to him, "Get out of here before I throw you out." Lalagos pointed his fist at him and said, "[w]e are going to take everything from you and we are going to ruin you * * *." Defendant said he then got up and told Thomas Lalagos "[t]hat he couldn't do that to me and I told him that I had a gun." Thomas came at him. By that time, defendant said he had the gun in his hand. Thomas twisted defendant's hand "[a]nd my wife was behind me and she was screaming and the gun went off." He heard more shots and realized that Thomas Lalagos was shooting at him. Leaving the gun in Thomas' hand, defendant said he turned and ran out of the door to his car and drove away, not knowing that anyone had been shot. A short time later, he called his lawyer, who was also his friend. He went to the lawyer's office and told him what happened. The lawyer called the police, then the hospital and learned that Eugenia Bitakis was dead. Defendant told the lawyer about the money he had in his possession and the lawyer deposited it in the bank. Then the lawyer arranged for defendant's surrender to the police. This was done in the afternoon of that day. Later, he was indicted for the murder of his wife and brought to trial.

Defendant's claim that he was denied a fair trial by the closing argument of an assistant state's attorney is buttressed by 14 references to the record which he has classified into 7 categories, all statements he contends prejudiced his rights to a trial before the jury. Without overlooking the importance of the others, or minimizing the cumulative effect they might have had on defendant's right to a fair trial, we will discuss only two of the instances about which he complains.

The first of these is related to the rebuttal testimony of Mrs. Claude Perry. She lived next door to the Lalagos. She testified that at about 10:30 A.M., March 4, 1969, she saw a car drive up to the Lalagos' home and park on the wrong side of the street. Mrs. Perry's description of the car and its driver tended to establish that it was the defendant she saw. In their argument to the jury, the two defense counsel commented on Mrs. Perry's testimony and the State's reason for her production as a rebuttal witness. We have examined these arguments. Neither lawyer

imputed false testimony to Mrs. Perry nor official misconduct in calling her as a witness. When the assistant State's Attorney closed the State's argument to the jury, he told them:

> "Mrs. Perry and what she told the police was no where in the police report. I am not ready to jeopardize my reputation by putting a false witness on that stand. If I thought the Lalagos family put her up to testifying she would not have hit that stand because it is not worth it to me. Especially she would not have been able to stand up on cross-examination and you would have seen that she was there to perjure herself and you would have disregarded her testimony and you would, therefore, had disregarded our entire case and found him not guilty."

Defendant contends that in this summation, the assistant State's Attorney told the jury that his personal, professional and official prestige warranted Mrs. Perry's credibility and truthfulness. He argues that this final argument was improper and prejudicial and that it constituted reversible error.

■■ Generally, it is said that in arguing to a jury, the comments of a prosecuting attorney which are outside the record, therefore not based on evidence and issues of the trial, are improper because they are the unsworn testimony of the prosecutor. (See Annot., 81 A.L.R.2d 1240, 1248.) Particularly, it has been held improper for a prosecuting attorney to argue to a jury that both his personal and official prestige warranted the truthfulness of the People's witnesses or he would not have called them. (*People v. Stratton* (1955), 286 App. Div. 323, 143 N.Y.Supp.2d 362, 366, aff'd 1 N.Y.2d 664, 133 N.E.2d 516.) In this case, the assistant State's Attorney pledged his personal reputation that a State witness was not a false one. He then went further and gave his opinion of her veracity. This was improper and prejudicial final argument to the jury. See *People v. Hoffman*, 399 Ill. 57, 77 N.E.2d 195; compare *People v. Liapis*, 3 Ill.App.3d 864, 279 N.E.2d 368.

The State's theory was that defendant, on the morning of March 4, 1969, killed his wife in the midst of a domestic quarrel. The only witness who could support this theory was Thomas Lalagos.

The defendant's theory was that Eugenia Bitakis was killed not by him, but by Thomas Lalagos. The only witness who could support this theory was defendant himself.

Recognizing his importance to the State's case, the assistant State's Attorney told the jury that Thomas Lalagos was "* * * the basic witness you have in deciding the guilt or innocence of John Bitakis. You either believe John Bitakis' story about what happened on March 4, 1969 or you believe the story of Tom Lalagos, the younger brother of Eugenia

Bitakis." It is in the context of the importance of Lalagos' testimony that we examine the assistant State's Attorney's closing argument. He said:

> "I submit we learned the evidence as it came to us, and there was not one bit of fabricated evidence that went on this stand. Because the power of the state's attorney, as awesome as it is to indict, is just as it is to say nolle prosse and that is the end of the case of John Bitakis.
>
> If there was one bit of evidence that Thomas Lalagos—and he could be indicted for involuntary manslaughter—was the offender, by God, Thomas Lalagos would be sitting there and not John Bitakis.
>
> Do you think the state's attorney's office—you people yourself are interested in indicting and convicting with the consequences that he faces for the rest of his life, the wrong man [sic]?"

Defendant contends that this final argument was prejudicial and constitutes reversible error because in it the jury was told that no fabricated evidence was presented to it, that the state's attorney had the awesome power to indict but also the power to nolle prosse the case against defendant, if the prosecutors had thought him innocent. Defendant argues that in this summation the assistant State's Attorney told the jury that if there was evidence that showed Thomas Lalagos was the offender, he would have been indicted rather than defendant. Implicit in this argument was the assertion that defendant's indictment was proof that he was guilty.

The State meets defendant's contention with a two-pronged argument. First, it asserts that he did not object to the final argument which he now complains deprived him of a fair trial. Second, even if he had objected, the final argument of the assistant State's Attorney was in response to that which defendant's two lawyers made to the jury.

■■ We have examined the record and find it does not support the State's assertions. Defendant's lawyers did not provoke the closing argument. The record shows that when the assistant state's attorney began the State's closing argument, defendant's lawyers objected. There followed a heated exchange among counsel. The court did not rule on the objection. Then the trial judge said, "Proceed. Mr. Busch (one of defendant's lawyers), be seated." The lawyer obeyed. Thereafter, no objection was made during the closing argument. At its conclusion, after the jury was instructed and had retired, defendant's counsel made an oral motion for a mistrial. They reminded the trial judge that he had directed counsel to sit down, thus interfering with defendant's objection to the final argument which he then insisted was prejudicial. The motion was denied. As two of the grounds in his motion for a new trial,

defendant asserted the denial of his motion for mistrial and the prejudicial final argument of the assistant State's Attorney. This motion was also denied. We hold that defendant did object to the prejudicial final argument of the assistant State's Attorney. *Commonwealth v. Cabot* (1922), 241 Mass. 131, 148, 135 N.E. 465; compare *Holbrook v. State* (1969), 6 Md.App. 265, 250 A.2d 904; *Biggs v. Commonwealth* (1922), 196 Ky. 655, 245 S.W. 292.

Long ago, our Supreme Court said that "[w]hen one is put upon his trial for a grave crime, involving his liberty and life, as in this case, it is highly improper for the prosecutor to do or say anything whose only effect will be to inflame the passion or arouse the prejudices of the jury against the accused, without throwing any light upon the case at hand." (*Earll v. People* (1881), 99 Ill. 123, 136.) From this pronouncement has evolved the rule that it is improper for a prosecutor to state his opinion as to the guilt or innocence of a defendant or to state facts not proved by the evidence, or otherwise get before the jury that which amounts to his own testimony. (*People v. Rothe*, 358 Ill. 52, 192 N.E. 777; see *Raggio v. People*, 135 Ill. 533, 26 N.E. 377; *People v. King*, 276 Ill. 138, 114 N.E. 601; *People v. Black*, 317 Ill. 603, 148 N.E. 281.) This rule is universally recognized and widely applied. (See Annot., 50 A.L.R.2d 766.) Consistent with it, we held in *People v. Fuerback*, 66 Ill.App.2d 452, 214 N.E.2d 330, that it was prejudicial final argument when an assistant State's Attorney told a jury that he would have *nolle prosequied* the case if he did not think defendant was guilty. (See *People v. Hopkins*, 124 Ill.App.2d 415, 259 N.E.2d 577.) Therefore, in this case we must conclude that the final argument of the assistant State's Attorney was prejudicial. Defendant was deprived of a fair trial. For these reasons, the judgment is reversed and the cause is remanded for a new trial.

Reversed and remanded.

SCHWARTZ and DEMPSEY, JJ., concur.