UNITED STATES of America,
Plaintiff-Appellee,

v.

Jimmie E. PHILLIPS,
Defendant-Appellant.

No. 75–1423.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 6, 1975.

Decided Dec. 30, 1975.

David T. Stutsman, Indianapolis, Ind., for defendant-appellant.

John E. Hirschman, U. S. Atty., Charles Goodloe, Jr., Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before CUMMINGS, ADAMS * and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

The primary issue presented by this appeal is whether statements made by the prosecuting attorney during closing argument to the jury were prejudicial. For the reasons set out below, we reverse the judgment of the district court and remand for a new trial.

I

The defendant-appellant, Jimmie E. Phillips, after a trial by jury, was convicted of distribution and attempted distribution of certain controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 846 and 18 U.S.C. § 2. He was sentenced pursuant to the Federal Youth Corrections Act, 18 U.S.C. §§ 5005–5026, to the custody of the Attorney General until discharged by the Youth Corrections Division of the United States Parole Board.

* Circuit Judge Arlin M. Adams of the United States Court of Appeals for the Third Circuit is sitting by designation.

The evidence adduced at trial sharply conflicted and the credibility of the witnesses became the most critical issue for the jury to resolve. Agent McGivney, the government's only witness to the transaction, testified that at approximately 9:00 p. m. on March 12, 1974, he and an informant, Ronnie Wheeler, were travelling to meet with other agents when they passed Phillips' pick-up truck parked at 247 Ball Street, Muncie, Indiana. They stopped at that address and were admitted to the residence by Phillips, who introduced them to Walter Ferguson. Phillips asked them if they wanted to purchase some marijuana. Wheeler and McGivney stated they did not want marijuana but were interested in purchasing phencyclidine. At Phillips' request, Ferguson produced a sample of phencyclidine which McGivney and Wheeler inspected. Phillips stated that an ounce of the drug would cost $1600. After McGivney indicated that the price was too high, Phillips took Wheeler to a corner of the room where he gave him a clear plastic bag containing the drug and told him the price would be $1300 per ounce. The following day, March 13, 1974, per their agreement, McGivney and Wheeler paid Phillips $1300 for the drug.

Defense witness Robin Lurson testified that she was present when McGivney and Wheeler visited the Ball Street residence on March 12, 1974, between approximately 5:30 and 6:30 p. m. They remained about 15 to 45 minutes, during which time she stated that there was not any conversation concerning transactions involving marijuana or phencyclidine. Lurson further testified that she was with Phillips on March 13, 1974 when he met McGivney and Wheeler, but that she did not see either of them hand anything to the defendant nor observe him with $1300 immediately after that meeting.

Two other defense witnesses testified that they visited Ferguson and Phillips at 247 Ball Street on March 12, 1974, from approximately 8:00 or 8:30 p. m. to 11:00 p. m., and that neither McGivney nor Wheeler were present during that time period.

## II

The defendant contends that the prosecutor's incorrect statement of law in his closing argument to the jury amounted to prejudicial error. In final argument, the prosecutor stated:

[PROSECUTING ATTORNEY]: If you try to reason any other way, [that this case has not been proven beyond a reasonable doubt] it would seem to me that what you're going to have to find is that the Government somehow or another trumped up a charge. In other words, you are going to have to find, I guess, that we really didn't get this stuff from anybody; that they tried to make a case on these guys and just went there with this stuff and came back and said, "Well, we got it from these people." *If you make that kind of finding on the basis of the evidence you have before you,* I can't help you, because *in effect what you're saying is that . . .* [the government agent] *has violated the civil rights of those two people. In other words, he has committed a crime and that—*

[DEFENSE COUNSEL]: I will object to that argument, Your Honor. *The jury is not being asked to find that the Government's witness has committed any crime.*

THE COURT: Well, it is argument, and *I think it's fair to let him go ahead.*

[PROSECUTING ATTORNEY]: *And if you find that such a crime was committed, you're going to have to find, I suppose, that I conspired with the agent to commit this crime by bringing it to you.* I suggest to you that there is absolutely no evidence to support that kind of a charge. (Tr. 282) (Emphasis added.)

During rebuttal, he continued:

I suggested to you at the outset that *if you believe that* [the agent is dishonest and the whole scheme is a plan to get the defendants], *you have got to believe that* [the government agent] *is committing a crime, because in ef-*

*fect that would be a violation of the civil rights of these two people. And I would be in effect conspiring with him to commit the crime, because I would be standing here trying to convince you he didn't commit a crime.* (Tr. 323) (Emphasis added.)

■ The prosecutor sought to justify his remarks by suggesting that he had made, not a statement of law, but rather "a . . . simple logical argument based on the facts before the jury." We cannot agree with the government's analysis. The question here is not whether the prosecutor intended to make a statement of law but rather what the jury probably thought. In our opinion, the statement of the prosecutor, left uncorrected by the court, could have led the jury to believe it had to find that the prosecutor and government witness violated the civil rights of the defendant in order to render a verdict of not guilty.

■ It is clear that the prosecutor misstated the law. When reaching a verdict in a criminal trial, the jury does not have to conclude that the government or its witnesses violated the civil rights of the accused or committed a crime against him to make a finding of not guilty. Our criminal justice system is founded upon the premise that a man is presumed innocent until proven guilty. After the close of the evidence in a criminal trial, the most important question to be decided by the jury is whether the government has proven the defendant's guilt of the crime as charged beyond a reasonable doubt. If the government has not met that burden of proof, then the presumption of innocence remains undisturbed and the jury must find the defendant not guilty. No additional findings are required of the jury to support that determination.

Having decided that the statement was erroneous, we now turn to the question of whether it was prejudicial to the defendant. "In every case involving improper argument of counsel, we are confronted with relativity and the degree to which such conduct may have affected the substantial rights of the defendant."

*Dunn v. United States,* 307 F.2d 883, 886 (5th Cir. 1962). The impact of a prosecuting attorney's remarks must be particularly scrutinized, since, as Judge Godbold points out in *Hall v. United States,*

. . . great potential for jury persuasion . . . arises because the prosecutor's personal status and his role as a spokesman for the government tend to give to what he says the ring of authenticity. The power and force of the government tend to impart an implicit stamp of believability to what the prosecutor says. 419 F.2d 582, 583–84 (5th Cir. 1969).

After reviewing the transcript and carefully considering the context of the closing argument and the credibility issues presented at trial, we find that the error was prejudicial. Hence, we are in agreement with this court's decision in *United States v. Bohle,* 445 F.2d 54, 71 (7th Cir. 1971), which held that a misstatement of law is:

". . . prejudicially erroneous where the jury is misinformed concerning what it can consider on the critical issue of a case and that misinformation is reinforced by the court after the defendant challenges its accuracy."

### III

■ The defendant also challenges the prosecutor's closing argument on the grounds that the prosecutor personally vouched for the credibility of the witness, thereby placing his personal integrity behind the truthfulness of the witness. The government contends that the prosecutor properly commented on the credibility of the witness, particularly in view of the defendant's numerous attempts to discredit the witness' testimony. We do not agree. The remarks of the prosecutor amounted to vouching for the credibility of the witness.

■ Clearly, an attorney cannot express his personal opinion as to the credibility of a witness. Disciplinary Rule 7–106(c)(4) of the Code of Professional Responsibility, formerly Rule 15 of the

**1024**

Canons of Professional Ethics of the American Bar Association reads:

> It is improper for a lawyer to assert in argument his personal belief in his client's innocence or in the justice of his cause.

Commenting on the reasoning behind Rule 15, the court in *Greenberg v. United States,* said:

> To permit counsel to express his personal belief in the testimony (even if not phrased so as to suggest knowledge of additional evidence not known to the jury), would afford him a privilege not even accorded to witnesses under oath and subject to cross-examination. Worse, it creates the false issue of the reliability and credibility of counsel. This is peculiarly unfortunate if one of them has the advantage of official backing. The resolution of questions [and] credibility of testimony is for impartial jurors and judges. The fact that government counsel is, as he says, an advocate is the very reason why he should not impinge upon this quasi-judicial function. We believe the canon to be elemental and fundamental.

280 F.2d 472, 475 (1st Cir. 1960), cited in *Hall v. United States, supra* at 586.

Judge Swygert further reiterated this position in *United States v. Grooms,* 454 F.2d 1308, 1312 (7th Cir.), *cert. denied,* 409 U.S. 858, 93 S.Ct. 141, 34 L.Ed.2d 103 (1972):

> It should be clear by now that statements by counsel as to their belief or lack of belief in the veracity of evidence and in the culpability of a party have no place in the trial of cases. Not only do such comments fail to add anything in any way probative of the real issues confronting the trier of fact, but they also possess the seeds of reversible error in that they tend to amplify the possibility that lay jurors may be misdirected from properly weighing the evidence by the implicit invitation to adopt the evidentiary assessment of the attorney. Such assertions of belief have been condemned as

improper conduct which may justify disciplinary action against the attorney indulging in them by Canon 15 of the old Canons of Professional Ethics of the American Bar Association and by Disciplinary Rule 7–106(C)(4) of that organization's new Code of Professional Responsibility. . . . [W]e have recently restated the proposition, if ever it was doubted, that such personal opinions are not proper issues to present to a fact finder. *United States v. Handman,* 447 F.2d 853 (7th Cir. 1971).

Courts have carefully reviewed the prosecutor's role in criminal trials and "[i]t has long been the law in this and other circuits that it is error for a prosecutor to inject into the proceedings his personal opinion as to the credibility of witnesses." *United States v. Jackson,* 485 F.2d 300, 303 (7th Cir. 1973) (citations omitted). The Supreme Court defined the duties of the United States Attorney in the leading case of *Berger v. United States:*

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.
>
> It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully ob-

served. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1934). *Accord, Wallace v. United States,* 281 F.2d 656 (4th Cir. 1960); *Hall v. United States, supra; Gaither v. United States,* 134 U.S.App. D.C. 154, 413 F.2d 1061 (1969).

Here the prosecutor went beyond simple vouching. He said, and then repeated, that in order to find the defendant innocent, the jury must find that the prosecutor conspired with the government witness to commit a crime. This is vouching to the utmost degree. It amounts to placing the prosecutor in the same conspiratorial nest with the witness.

Furthermore, the prosecutor's misconduct constituted prejudicial error.

The applicable test for prejudice is whether we can say, "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." The decisive factors are the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error. (Citations and footnotes omitted.) *Gaither v. United States, supra* at 1079.

In this case, the testimony of the witnesses sharply conflicted and the jury had to weigh the credibility of each witness to decide the case. There were no steps taken to mitigate the error. Indeed, the court may have reinforced it when defense counsel's objection was overruled. It is likely, then, that the jury was substantially swayed by the error.

For the reasons herein stated, we conclude that the statements of the prosecuting attorney were highly prejudicial and erroneous. It is most probable that the defendant did not receive the fair trial to which he was entitled.

The judgment of conviction is reversed and remanded to the district court for a new trial.