THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID FAYSOM, Defendant-Appellant.

First District (2nd Division) No. 83—565

Opinion filed February 26, 1985.—Rehearing denied April 1, 1985.

518

Steven Clark and Martin Carlson, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Donna B. More, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

A jury found defendant guilty of murder, armed violence, unlawful restraint, and pandering, and he was sentenced to concurrent terms of imprisonment of natural life for murder, 15 years for armed violence, and three years for pandering. On appeal, defendant raises issues involving prosecutorial misconduct during final argument, failure to suppress certain evidence, an improper jury instruction on accountability, his sentence, and his conviction of armed violence, based on unlawful restraint.

On the morning of October 9, 1981, 13-year-old Nicole Lee's nude body was discovered near a loading dock at 4223 West Lake Street in Chicago. Clothing and "drag marks" were found nearby. The victim

had been shot three times; in the left chest, the right abdomen, and under the right armpit. The first two wounds had muzzle imprints, indicating that the gun and the skin were in contact; the third wound also resulted from a bullet fired at close range. According to the medical examiner, death was caused by bullet wounds of the chest and abdomen, with penetration of the heart and liver. No vaginal trauma was found. The victim was last seen alive by her mother on October 6, 1981, who reported her to the police as a runaway at that time. Defendant was arrested on November 2, 1981, and subsequently charged in connection with the homicide.

At trial, Karen Brandon, who was charged with murder, pandering, unlawful restraint, and armed violence, testified that she made an agreement with the State's Attorney's office, whereby the murder charge would be reduced to concealing a homicidal death in exchange for her truthful testimony at defendant's trial. In June 1981, she was 16 years old and lived with her five-month-old child and her mother in a housing project. She was introduced to defendant, who persuaded her to have sex with men for money. He instructed her what to do. Defendant took her and her friend Sheila Wilson out every night. She was to give all her money to defendant.

On October 6, 1981, she and defendant were in the area of Sheridan and Broadway. At about 11 p.m., they met Nicole Lee near the rapid transit station and, after about 30 minutes, they all took a train and bus to a restaurant at Cicero and Roosevelt. Brandon went out to "work" from the restaurant. When she returned, defendant said that Nicole "was ready to work." Both women did so: Nicole had two "dates" that night; Brandon had about eight. Brandon, Nicole and defendant went to a hotel for the night. Defendant had sex with both women. The following day, they walked around, with defendant "showing off" his "two ladies." Later they went to "work." Brandon had seven or eight "dates," and Nicole had one, because "she really didn't want to date." The next day defendant took the girls to Cicero and Roosevelt in his brother's car to "work." Nicole said she didn't want to do so because she was sick. Nicole and defendant argued for quite a while. Brandon went on "dates"; Nicole did not. Defendant became very angry. At about 1 a.m. on October 9, Brandon finished "working." Eventually, they drove to a dark alley on Lake Street. Nicole was in the back seat and Brandon in the front passenger seat. Defendant told Nicole "he didn't like anyone to play with him." He stopped the car. He ordered Nicole to take off her clothes, pointing a gun at her. She complied. He told her, "Show me your heart." When she did so, he shot her. Nicole told him to take her to a hospital and

that she would make him money. He shot her again, in the lower stomach. She was still alive, pleading with him, when he shot her a third time. She said nothing more.

Defendant got out of the car, opened the back door, and dragged Nicole out to a nearby loading dock. He told Brandon to wipe the blood off the back seat, which she did, using Nicole's panties. She passed the victim's clothing out the window and he put them by her body. Brandon and defendant spent the night at a hotel. The next day, they went to a gas station, where he took out the back seat, looked for spent shells, and threw them away. She was present when he later gave the gun to "Uncle Jimmy" to sell. She did not know Jimmy's last name. When arrested on November 2, 1981, along with Sheila Wilson, she told police what happened, knowing that defendant was in custody at the time.

On cross-examination, Brandon testified that she told police the same story she related in court. She admitted that she told Sheila Wilson that she and defendant had each shot Nicole two times. This was a "lie," however. After she was arrested, she said defendant alone had shot Nicole and has been "sticking to that ever since." When she spoke to police on October 31, prior to her arrest, she denied that she or defendant were involved in the homicide. She later made a statement to an assistant State's Attorney, in the presence of a court reporter.

Also testifying at trial was Jimmy Gibson, defendant's cousin. He spoke to defendant and Brandon in his home in the middle of October 1981, when defendant wanted to sell him a gun. He and defendant then went to the Jones Restaurant; defendant went inside with the gun, and returned with $90 and no gun. Defendant gave Gibson $15. On cross-examination, Gibson stated that Brandon initially had the gun when they came to his home and gave it to defendant. LaMan Wilson testified that in October 1981 defendant came to the Jones Restaurant. Wilson gave defendant $90 for a gun. The police came in two weeks later, and he gave them the gun.

A Chicago police mobile unit technician "processed" the car allegedly used by defendant on October 9, 1981. He found a bullet hole in the rear seat and a fired bullet under the seat. A Chicago police firearms examiner tested the gun recovered from LaMan Wilson and compared test-fired bullets with bullets recovered from the car and Nicole Lee's body. He concluded that all were fired by the same weapon. Defendant presented the testimony of a Chicago police crime lab microanalyst, who examined vaginal swabs taken from the victim's body, finding no evidence of spermatozoa.

Herbert Faysom, defendant's father, testified that he first saw Brandon during March or April 1981 at the Yellow Cab Company, where both he and defendant worked. She was there so frequently that he had defendant fired for "bringing girls on the job." In his home one day, he saw that Brandon had a gun in her purse. He asked her why she kept it, and she told him she needed it when she works. When he found out what sort of work she did, he put defendant out and did not allow either of them to come to his home. He identified the gun in evidence as the one he saw in Brandon's possession. He never saw defendant with a gun. The defense rested.

Defendant was found guilty and sentenced, as noted above. After his motion for a new trial was denied, defendant brought this appeal.

I

■ Defendant contends that he was denied a fair trial because of various instances of prosecutorial misconduct during final argument. He first cites the prosecutor's references to the victim's family to the effect that the family of the victim will be thinking about this tragedy through endless sleepless nights and daylight hours. He further noted that the thoughts of those who participated in the trial will be like a few drops in Lake Michigan when compared to the grief of the family of Nicole Lee who, because she refused to work as a prostitute, was eliminated, creating a legacy that the victim's family will live with.

Suggestions that a jury consider the victim's family as a material factor in its deliberations is improper and prejudicial (*People v. Dukes* (1957), 12 Ill. 2d 334, 340, 146 N.E.2d 14; *People v. Starks* (1983), 116 Ill. App. 3d 384, 389-90, 451 N.E.2d 1298), as is argument intimating that the victim's family deserves the jurors' sympathy (*People v. Gregory* (1961), 22 Ill. 2d 601, 605-06, 177 N.E.2d 120; *People v. McLean* (1971), 2 Ill. App. 3d 307, 312-13, 276 N.E.2d 72). Here, defendant's objections were overruled and the prejudicial effect exacerbated. (*People v. McLean* (1971), 2 Ill. App. 3d 307, 276 N.E.2d 72.) The State may comment unfavorably on the evil effects of crime and urge a fearless administration of the law (*People v. Jackson* (1981), 84 Ill. 2d 350, 360, 418 N.E.2d 739); however, no such remarks which include references to the victim's family are permissible.

■ Defendant next urges that the prosecutor improperly related facts not in evidence and expressed his personal opinion regarding defendant's guilt and Karen Brandon's credibility. The prosecutor, in discussing the "deal that was cut with Karen Brandon," told the jury, over defendant's overruled objection, that based on information and evidence, two people were involved in this death, and it would be next

to impossible to prove either one guilty without the help of one of them, of which they informed their superiors at "the top." Upon defendant's further objection, the court in a sidebar advised the prosecutor not to testify or inject his own credibility into the case. The court then admonished the jury to disregard the prosecutor's remarks concerning the "arrangement."

References in argument to matters outside the record are improper (*People v. Bitakis* (1972), 8 Ill. App. 3d 103, 106, 289 N.E.2d 256); however, the prosecutor has a right to comment on the evidence and reasonable inferences that can be drawn therefrom even if detrimental to defendant (*People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 322, 379 N.E.2d 847). Here, the State's "deal" with Brandon, alluded to repeatedly during her testimony, was known to the jury. The prosecutors' discussions with their supervisors had not been presented at trial, and were therefore impermissible, but the court's subsequent instruction to the jury to disregard this comment served to cure any prejudice accruing to defendant. *People v. Meares El* (1980), 83 Ill. App. 3d 31, 41, 403 N.E.2d 547; *People v. Lindsay* (1978), 67 Ill. App. 3d 638, 654, 384 N.E.2d 793.

■ Defendant also asserts that the prosecutor injected his personal opinion of Brandon's credibility by telling the jury that he didn't like Karen Brandon and he didn't expect the jury to like Karen Brandon either, he was grateful to her and not ashamed of her as a prosecutor, she represented the best thing that this case or any crime could have, she represented the best evidence known in the law, an eyewitness, and she was the only person that was available during this case to tell the jury what happened and exactly how Nicole Lee met her death.

A prosecutor may not give his personal opinion of a witness' credibility, nor pledge his reputation on such credibility. (*People v. Bitakis* (1972), 8 Ill. App. 3d 103, 289 N.E.2d 256.) Here, however, the prosecutor was not personally "vouching" for Brandon's credibility; rather, he was arguing on the basis of the evidence adduced that, as an eyewitness, her account of the crime should be accorded considerable weight. In any event, defendant did not object to these remarks, either at trial or in his post-trial motion, thereby waiving his objection to any error in this regard. *People v. Turk* (1981), 101 Ill. App. 3d 522, 530, 428 N.E.2d 510.

Defendant also complains of further argument concerning the "deal" that had to be made with Brandon in order to effectively prosecute the defendant; however, the "deal" had been fully ventilated before the jury. Further, remarks complained of by defendant, that he

was the "shooter" who was "in control," were not improper and were supported by the evidence. The prosecutor here was not expressing his personal and unsupported opinion of defendant's guilt. See *People v. Black* (1925), 317 Ill. 603, 619, 148 N.E. 281. See also *People v. Whitlow* (1982), 89 Ill. 2d 322, 341, 433 N.E.2d 629.

■ Defendant next contends that the prosecutor improperly defined reasonable doubt and minimized the State's burden of proof by telling the jury that reasonable doubt was no mystery, not a magic formula, not a secret equation that only lawyers know about, but translated into two words, "common sense," and what makes sense given the facts.

It is improper for counsel to define "reasonable doubt" for a jury. (*People v. Garcia* (1981), 103 Ill. App. 3d 779, 784-85, 431 N.E.2d 1234; *People v. Jenkins* (1980), 89 Ill. App. 3d 395, 398, 411 N.E.2d 1047.) Although here the prosecutor improperly equated reasonable doubt with "common sense," these remarks, viewed in context, did not directly impugn the reasonable-doubt standard and do not merit reversal. See *People v. Smith* (1981), 93 Ill. App. 3d 1133, 1139, 418 N.E.2d 172; *People v. Ayala* (1981), 96 Ill. App. 3d 880, 883-84, 422 N.E.2d 127; *People v. Cartalino* (1982), 111 Ill. App. 3d 578, 589, 444 N.E.2d 662.

■ Defendant urges that the prosecutor in rebuttal shifted the burden of proof to defendant by telling the jury that, to find defendant not guilty, it would have to believe that Brandon was the killer, citing *United States v. Vargas* (7th Cir. 1978), 583 F.2d 380, *United States v. Phillips* (7th Cir. 1975), 527 F.2d 1021, and *People v. Weinstein* (1966), 35 Ill. 2d 467, 470, 220 N.E.2d 432. Defendant cannot claim error, however, where the prosecutor's remarks are in reply to and were invited by defense counsel's argument. (*People v. Dixon* (1982), 91 Ill. 2d 346, 350-51, 438 N.E.2d 180; *People v. Hudson* (1981), 102 Ill. App. 3d 346, 351, 430 N.E.2d 51.) Defendant's cross-examination of Brandon, his attempt to attribute a motive to her, his emphasis upon her prior statement that she had shot the victim, and his attempts to show that the gun had been in her possession until it was sold by defendant, support the theory that Brandon was the killer. The physical evidence linked defendant and Brandon to the crime; the automobile, the gun, and the bullets. Defendant could hardly have argued that he was elsewhere when it took place. Although the prosecutor's remarks were improper, under the circumstances they were harmless.

■ Defendant also insists that he was prejudiced when the prosecutor repeatedly argued that Brandon's testimony was credible be-

cause she told the same story to police after her arrest. As a general rule, a witness' prior consistent statement is inadmissible to corroborate his testimony at trial, except where such statement is used to refute a charge of recent fabrication or a contention that the witness had a motive to testify falsely and the prior statement was made when the motive did not exist. (*People v. Emerson* (1983), 97 Ill. 2d 487, 500-01, 455 N.E.2d 41; *People v. Clark* (1972), 52 Ill. 2d 374, 389, 288 N.E.2d 363; *People v. Tidwell* (1980), 88 Ill. App. 3d 808, 810-11, 410 N.E.2d 1163.) Brandon's prior statements to authorities, both consistent and inconsistent, were almost exclusively the subjects of defendant's cross-examination of her. The jury thus became familiar with the substance of these statements principally through defendant's own efforts. The prosecutor argued in essence that the prior consistent statements were made after defendant was arrested; because Brandon had less to fear at that time, these statements were more credible than earlier inconsistent ones, when defendant was still at large. This argument, based on matters in the record, was entirely proper.

■ Defendant's final contention in this regard is that the cumulative effect of the foregoing errors prejudiced his right to a fair trial. (See *People v. Whitlow* (1982), 89 Ill. 2d 322, 341; *People v. Ray* (1984), 126 Ill. App. 3d 656, 663, 467 N.E.2d 1078; *People v. Starks* (1983), 116 Ill. App. 3d 384, 395-96.) Certain remarks made here were improper; however, on balance, defendant was not thereby deprived of a fair trial. In view of the compelling evidence of defendant's guilt, the remarks could not have been a material factor in his conviction nor would the verdict have been different in their absence. (*People v. Panczko* (1980), 86 Ill. App. 3d 409, 413, 407 N.E.2d 988.) At worst, any error here was harmless (see *United States v. Hasting* (1983), 461 U.S. 499, 508-12, 76 L. Ed. 2d 96, 105-08, 103 S. Ct. 1974, 1980-82; *People v. Reese* (1984), 121 Ill. App. 3d 977, 986-87, 460 N.E.2d 446), especially since the jury was properly instructed not to consider argument as evidence and to disregard any argument not based on the evidence (see *People v. Rowe* (1983), 115 Ill. App. 3d 322, 328, 450 N.E.2d 804; *People v. Smith* (1982), 111 Ill. App. 3d 895, 906, 444 N.E.2d 801).

II

■ Defendant next assigns error to the circuit court's failure to suppress evidence allegedly obtained though certain statements made by defendant in violation of his fifth amendment right to remain silent.

Prior to trial, defendant filed motions to suppress statements, quash arrest, and suppress evidence. At a subsequent suppression hearing, testimony showed that defendant was arrested at about 3:45 a.m. on November 2, 1981, when he made inquiries at the police station about Karen Brandon and Sheila Wilson. Upon being advised of his *Miranda* rights, defendant said he would "think about" talking to police. He was then left alone in an interrogation room until 3 p.m., when he was taken to another room and confronted with Brandon, who was told by police to repeat her story which had implicated him. Defendant responded by saying, "It didn't happen that way." Upon his return to the first room he made an oral statement to an assistant State's Attorney, but refused to give a written statement. On the basis of this evidence, the circuit court found that defendant did not voluntarily relinquish his *Miranda* rights, as his statements were the result of "coercion and intimidation by sudden accusation without notice." The court allowed defendant's motion to suppress his post-arrest statements but did not rule on his motion to suppress the pistol, allegedly recovered by exploitation of these suppressed statements.

During trial, defendant renewed his motion to suppress the use of the pistol and any testimony concerning it. At a hearing on this motion, Detective Cornelius Johnson testified that he was asked by the assistant State's Attorney who had taken defendant's post-arrest statement where the weapon was. Johnson asked defendant, who then told him that Brandon had it, but had given it to her mother. Johnson related that Brandon claimed defendant gave the gun to his cousin, who sold it to someone on 16th Street. Defendant then admitted he sold the gun and took the police to his cousin, Jimmy Gibson, who, in turn, directed them to LaMan Wilson, who had the gun. The circuit court allowed the gun to be introduced at trial, along with testimony regarding it, reasoning that the recovery of the weapon was "motivated by the conversation that these officers had with Karen Brandon."

Defendant urges application of the "poisonous tree" doctrine, under which, assuming the primary illegality of official action, the question is whether particular evidence was found by exploitation of this illegality or by "means sufficiently distinguishable to be purged of the primary taint." (*Wong Sun v. United States* (1963), 371 U.S. 471, 488, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417; *People v. Wilson* (1975), 60 Ill. 2d 235, 237-38, 326 N.E.2d 378; *People v. Althide* (1979), 71 Ill. App. 3d 963, 969, 389 N.E.2d 240.) The court's action here was proper, however, under the Supreme Court's recently-announced "inevitable discovery" exception to the exclusionary rule. Under this ex-

ception, if the State can establish by a preponderance of evidence that the challenged evidence ultimately or inevitably would have been discovered by lawful means, it may be used against the accused. (*Nix v. Williams* (1984), 467 U.S. 431, 444-45, 81 L. Ed. 2d 377, 387-88, 104 S. Ct. 2501, 2509.) In the case *sub judice*, Brandon told police that defendant gave the gun to his cousin "Jimmy," who, in turn, sold it to a man on 16th Street. Based upon evidence that the cousin was Jimmy Gibson and that he, not defendant, directed police to LaMan Wilson and the gun, the circuit court reasonably could have concluded that the weapon ultimately or inevitably would have been discovered, based on Brandon's assertion alone.

Admission of the challenged evidence was harmless in any event. In considering whether the erroneous admission of evidence requires reversal, reviewing courts must look to the entire record to determine whether the evidence reasonably affected the findings of the trier of fact and should not disturb the judgment where defendant's guilt was proved beyond a reasonable doubt. (*People v. Wilkes* (1971), 2 Ill. App. 3d 626, 634, 276 N.E.2d 761.) Although the weapon and testimony concerning it were significant, the key evidence here was Brandon's eyewitness testimony, which by itself would have been sufficient to support the verdict.

### III

■ Defendant maintains that the court erred by giving Illinois Pattern Jury Instruction, Criminal, No. 5.03 (2d ed. 1981), stating the law of accountability, when no substantive evidence supported a finding of guilt on this basis.

Although the submission of an instruction in the absence of supporting evidence is error (*People v. Banks* (1962), 26 Ill. 2d 259, 262, 186 N.E.2d 338; *People v. Shackles* (1977), 44 Ill. App. 3d 1024, 1026, 358 N.E.2d 1329), even slight evidence of accountability will justify giving such an instruction (*People v. Ong* (1981), 94 Ill. App. 3d 780, 785, 419 N.E.2d 97; *People v. King* (1980), 88 Ill. App. 3d 548, 554, 410 N.E.2d 1070). Evidence showing that defendant acted as principal and also assisted others in the commission of the offense authorizes the giving of instructions based on both principal and accountability theories. *People v. Williams* (1981), 97 Ill. App. 3d 394, 405, 422 N.E.2d 1091; *People v. Calderon* (1981), 98 Ill. App. 3d 657, 661, 424 N.E.2d 671.

The defense theory throughout trial, meriting submission of this instruction, was that Brandon had shot the victim, as shown by defendant's cross-examination of Brandon and his reference to her

prior statement that she was the shooter, his cross-examination of the medical examiner, which suggested that the victim had been shot from the passenger side of the car, occupied by Brandon, and the testimony of defendant's father that he had seen Brandon, not his son, with the murder weapon. In any event, submission of the instruction here does not merit reversal. Even an inappropriately given accountability instruction does not constitute reversible error where, as here, sufficient evidence was adduced from which the jury could find defendant guilty as principal. (*People v. Andrews* (1981), 95 Ill. App. 3d 595, 598, 420 N.E.2d 509; *People v. Lusietto* (1976), 41 Ill. App. 3d 205, 208, 353 N.E.2d 385.) Any error in giving the instruction, therefore, would have been harmless.

## IV

Defendant next insists that his natural life sentence was excessive, in that the court considered aggravating factors not supported by the record while failing to consider mitigating factors.

The determination of a sentence is within the discretion of the trial court and should not be altered absent a showing that such discretion was abused. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882.) A proper sentence should take into account both the seriousness of the offense and the rehabilitative potential of the offender. (Ill. Const. 1970, art. I, sec. 11; *People v. La Pointe* (1982), 88 Ill. 2d 482, 493, 431 N.E.2d 344.) Although not required to specify for the record the process by which a sentence was determined (*People v. La Pointe* (1982), 88 Ill. 2d 482, 431 N.E.2d 344), it is an abuse of discretion for a court to fail to adequately indicate on the record that it considered the proper sentencing criteria (*People v. Rickard* (1981), 99 Ill. App. 3d 914, 918-19, 425 N.E.2d 1317). In this connection, section 5—8—1(a)(1)(b) of the Unified Code of Corrections provides that, if the court finds that the murder of which defendant was convicted was accompanied by "exceptionally brutal or heinous behavior indicative of wanton cruelty," it may sentence him to a natural life term of imprisonment. Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1) and (b).

At sentencing, defendant's mother and father testified that they would provide their son a home if he was released. Defendant told the court that he would like to return to school. The pre-sentence report reflected his graduation from high school, a history of employment, no juvenile court record, and a single prior conviction for criminal damage to property in 1978 resulting in a sentence of one year's probation. Nevertheless, the court found no mitigating factors. Noting that

defendant shot the victim after she begged for help, he found the offense "brutal and heinous *** of a behavior indicative of wanton cruelty and atrocious immorality." Based upon this finding, and its clear evidentiary support in the record, it cannot be said that the instant sentence was excessive.

This case, however, has an unusual aspect which requires further comment. Defendant was sentenced on February 16, 1983. He filed a notice of appeal on March 8, 1983, amended on May 3, 1983. Three months later, on August 24, 1983, the circuit court *sua sponte* vacated the life sentence and imposed a 70-year sentence, observing that it "might have been unduly influenced *** by the loss of life, the death of a young girl," and stating that defendant was then 22 years old and "ought to have some hope of some day having his freedom." On October 5, 1983, after the State filed in the supreme court a motion for leave to file a petition for *mandamus*, which that court later denied, the circuit court vacated its August 24 order and reinstated the natural life sentence. The court put on record the bases for its sentence reduction for the benefit of review. Among the reasons given were: Defendant's age; the absence of prior felony convictions; defendant's record of a minor misdemeanor conviction; defendant's confession, which it found indicative of remorse and a desire to reform; the first sentence having been based, in part, on an unsupported inference that defendant knew that the victim was 13 years old; an unsupported inference that defendant introduced the victim to prostitution; and a comparison of the instant case to several others, which it thought involved equal or more heinous offenses, for which defendants received lesser sentences.

The State has filed a motion to strike those portions of the record on appeal involving the August 24, 1983, and October 5, 1983, hearings. This motion was taken with the case, and in a separate order is denied. The State points out that the circuit court lacked jurisdiction to modify the sentence 30 days after its imposition (*People ex rel. Carey v. Rosin* (1979), 75 Ill. 2d 151, 157-58, 387 N.E.2d 692; *People v. Hills* (1980), 78 Ill. 2d 500, 508, 401 N.E.2d 523) and that this court's jurisdiction extends only to proceedings which took place before the notice of appeal was filed and served, limiting the scope of review to the judgment specified in the notice (*People v. Carter* (1980), 91 Ill. App. 3d 635, 638, 415 N.E.2d 17).

Generally, an appellate court has no jurisdiction to review a circuit court's actions subsequent to the filing of the notice of appeal; yet, there is some authority for a reviewing court's consideration of matters occurring after such filing in certain instances. In *People v.*

*Kline* (1981), 99 Ill. App. 3d 540, 425 N.E.2d 562, *aff'd in part & rev'd in part on other grounds* (1982), 92 Ill. 2d 490, the appellate and supreme courts considered defendant's sentence in light of sentences imposed on codefendants after defendant's notice of appeal was filed. More nearly apposite in *People v. Novak* (1967), 84 Ill. App. 2d 276, 228 N.E.2d 139, in which the appellate court took judicial notice of a letter written by the trial judge, relating the reasons why he would reduce defendant's sentence if he had authority. The appellate court, accordingly, reduced the sentence. We find no basis in the circumstances of this case to do so here. The finding of exceptionally brutal and heinous behavior indicative of wanton cruelty was supported here by eyewitness testimony depicting the victim, forced to disrobe and to identify her heart as the target for defendant who shot her there; the victim, still alive, pleading that she would go back to work as a prostitute and make money for defendant if she were taken to a hospital, and defendant shooting her again in response; and the victim's continued plea for life after the second shot struck her body, once again thereafter being shot by defendant. The allegedly mitigating factors of supportive parents, work history, previous record, or misconceptions of the victim's age or her introduction to prostitution have little bearing on the brutality and heinousness of defendant's acts and afford no basis upon which to interfere with the original sentence imposed.

## V

■■ Defendant's final contention, that his conviction for armed violence based on the underlying felony of unlawful restraint was improper, is conceded to be meritorious by the State. (*People v. Wisslead* (1983), 94 Ill. 2d 190, 446 N.E.2d 512.) Defendant's armed-violence conviction must be vacated. *People v. Alexander* (1983), 118 Ill. App. 3d 33, 38, 454 N.E.2d 691.

For the foregoing reasons, the convictions and sentences must be affirmed except for the conviction and sentence for armed violence, which are vacated here. 87 Ill. 2d R. 615(b)(1) and (4).

Affirmed in part; vacated in part.

STAMOS, P.J., and PERLIN, J., concur.