THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DONALD TAYLOR, Defendant-Appellant.

Second District (2nd Division) No. 74-311

Opinion filed February 13, 1976.

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (Edward N. Morris, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

Defendant Donald Taylor was indicted, along with five others, by a Lake County grand jury for the murder and armed robbery of William Richter and attempted murder of James Davis. Defendant Taylor was tried separately and found guilty of murder and attempt murder and not guilty of armed robbery by a jury. He was given two concurrent sentences of 40 to 120 years each. Defendant Taylor appeals his convictions and sentences on the grounds that the court's application of the

hearsay rule kept out evidence so as to deprive defendant of his right to a fair trial.

In the early morning hours of September 2, 1972, defendant Taylor, along with Nathaniel Burse and Donald Peatry in his car and Butch Jackson, Michael Clark, Edward Moran and Robert Wilson in another car, went up to the Edens Expressway with the intention to rob truck drivers parked along the highway. Burse and Moran died in the County Jail June 13, 1973, prior to trial, so all charges against them were dismissed. Butch Jackson, the driver of the other car was a witness for the State and no charges were placed against him. Jackson testified at Taylor's trial that the above seven men set out in two cars from Stateway Housing Project in Chicago, with Jackson in the lead toward the Edens Expressway, and after reaching the Edens Expressway, that both cars exited after seeing a semi-trailer and a pickup truck parked alongside the northbound Edens. The two cars then stopped, and Taylor and Jackson had a conversation about how to execute their plans, Taylor suggesting they go back to the last exit, get back onto the northbound Edens and pull up behind the trucks. Jackson testified that he had a .25 automatic, Clark had a 38-caliber snubnosed revolver, Moran had an M1 carbine and Wilson had a machete. He also testified he had earlier that evening been with defendant in defendant's brother's car and heard defendant ask his brother for his brother's gun, heard his brother say it was in the glove compartment, and saw defendant reach over and open the glove compartment. Jackson said he went around and got back on the northbound Edens approaching the trucks with defendant's car still behind him. Jackson pulled over behind the semi and did not see defendant's auto pass him. Clark, Moran and Wilson approached the trucks while Jackson approached a Mustang with all its doors locked and windows shut. Jackson saw Moran run in front of the semi, and he returned to his own car, heard three or four shots from the area of the pickup, then heard the semi start up and three or four more shots as the semi pulled away. The three men came back to the car and Jackson sped away, exited and turned onto southbound Edens at which time he saw defendant's auto northbound on Edens and finally catch up behind him on southbound Edens.

Robert Novelle, former chief of the Criminal Division of the Cook County State's Attorney's office testified at trial that he spoke to defendant on October 14, 1972, at the sheriff's station after reading defendant his *Miranda* rights. He testified that defendant told him he had pulled up in front of the pickup truck, awakened the man sleeping inside and demanded money. The man said he had no money, so defendant pointed his .25 automatic in his face, pulled the trigger and the gun misfired.

The defendant said another man he refused to identify stepped around defendant and shot the man. Defendant refused to sign anything or repeat the statement before a court reporter, and at trial contended the statement had been coerced and that he was not present at the scene of the crime. The man in the pickup truck, who died of his wounds within 2 weeks, was William Richter, and the man in the semi was James Davis.

Defendant's two points on appeal concern evidence offered by defendant and ruled inadmissible as hearsay by the judge. Offers of proof were made on both points outside the presence of the jury and both concerned testimony by Illinois State Police Officer Ronald Brooks. Trooper Brooks testified, in the offer of proof, that on October 13, 1972, he had a conversation with Moran after advising him of his constitutional rights, and that Moran told him that only one car had gone to the Edens Expressway that night. Moran told Brooks he awakened the driver of the semi who then drove off and Clark fired shots at the semi. The trooper then asked Moran who shot Richter and Moran said he and Clark went to the pickup, Clark woke up the driver and he (Moran) then opened the truck door and shot the driver. Trooper Brooks was then cross-examined by the State and testified that he knew that Moran had a .30-caliber carbine and that Richter had been shot with a .38 caliber; that Moran said he opened the door and Richter had told the trooper the doors had been locked; and Moran said they got nothing from Richter while Richter told the trooper $280 had been taken. Therefore, the trooper replied to Moran that he didn't believe him because too many things didn't add up. After that Moran "kind of smiled and said, 'There was another car out there,'" that defendant was in the other car, and that the people in that other car "dealt on the pickup truck" while the people in the auto he was in "dealt on the semi."

■ Defendant contends that Trooper Brooks' testimony of Moran's confession should have been allowed into evidence even though it was hearsay and cites us to *Chambers v. Mississippi*, 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973). In *Chambers*, the Supreme Court held that strict application of Mississippi's "party witness" and hearsay rules to keep out cross-examination as an adverse witness by defendant of a third person who had confessed to the crime with which defendant was charged, and to prevent defendant from presenting witnesses to three independent oral confessions by this same third party, deprived defendant of his right to a fair trial. However, the Supreme Court did not hold that exclusion of hearsay statements against the declarant's penal interest would deprive a defendant of due process under all circumstances. As stated by the court:

"It is believed that confessions of criminal activity are often motivated by extraneous considerations and, therefore, are not as inherently reliable as statements against pecuniary or proprietary interests. While that rationale has been the subject of considerable scholarly criticism, we need not decide in this case whether, under other circumstances, it might serve some valid state purpose by excluding untrustworthy testimony." 410 U.S. 284, 299-300, 35 L. Ed. 2d 297, 311, 93 S. Ct. 1038.

In *Chambers* the court found assurances of the reliability of the three independent oral statements: that the statements were made spontaneously to close friends soon after the incident, that each statement was corroborated by other evidence in the case, the sheer number of independent confessions, that the statement was self-incriminatory and against interest, and that the declarant was available and present in the courtroom. The court found that exclusion of the witnesses who would testify to the confessions was error because of the presence of the elements of reliability made these declarations against penal interest admissible.

The Illinois Supreme Court has also focused on these elements of trustworthiness as the determinative factor as to whether these declarations against penal interest will be admissible. In *People v. Lettrich*, 413 Ill. 172 (1952), the court determined that the confession of a third party should be allowed in at trial when the only evidence linking defendant with the crime was a confession which defendant alleged was procured from him by duress and which didn't coincide with many known facts, while the confession of the third party was made to the director of the behavior clinic at Cook County, a completely disinterested party. Illinois' position was even more clearly delineated in *People v. Craven*, 54 Ill. 2d 419 (1973), which came after *Chambers* and clarified *Lettrich*. The court found that the third party's confession sought to be introduced by defendant in *Craven*, fell far short of the very compelling circumstances of *Lettrich* and lacked the measures of reliability suggested by the *Chambers* analysis (54 Ill. 2d 419, 429), citing that the purported statement was heard only by the woman with whom defendant was living, was unsupported by independent evidence, and the declarant was unavailable. Thus the court held the statement inadmissible.

We likewise hold that the circumstances in the instant case lack the indicia of reliability present in *Chambers* and the compelling circumstances of *Lettrich*. In the instant case Moran repudiated his statement just after giving it when Brooks challenged its veracity, the statement was inconsistent with many known facts of the incident, and the declarant, having died prior to defendant's trial, was unavailable. We therefore

hold that the trial court did not err in its ruling that Trooper Brooks' testimony of Moran's confession was inadmissible.

■■ Defendant's second allegation of error also concerns testimony of Brooks ruled inadmissible as hearsay and preserved through an offer of proof. Brooks testified that he showed Richter, before his death, a book of approximately 80 mugshots. Brooks testified the first time he flipped through the pages Richter didn't make any identifications, and the second time through the book, Richter picked out two people, neither of whom was the defendant. On cross-examination within the offer of proof Brooks testified that defendant's photograph was not among the 80 photos in the book, and that Richter made no positive identification, but had picked out photographs that looked similar to the subjects involved. Defendant cites no case support for his contention that this out of court identification by an unavailable declarant should be let in contrary to the hearsay rule except the broad statement from *Chambers*, 410 U.S. 284, 302, 35 L. Ed. 2d 297, 313, 93 S. Ct. 1038, "* * * where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." We find that the ruling of the trial court to exclude this testimony was not such a mechanistic application so as to defeat the ends of justice. The probative value of this evidence was extremely low; there was no positive identification, the victim was only choosing the photos as "similar looking" to the perpetrators, and the victim was not presented with a photograph of defendant. The testimony was clearly hearsay and the declarant is unavailable.

We therefore hold that the ruling of the trial court to exclude this testimony was correct, and that defendant was not deprived of his right to a fair trial.

For the foregoing reasons, the judgment of the Circuit Court of Lake County is affirmed.

Affirmed.

T. J. MORAN, P. J., and RECHENMACHER, J., concur.