THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANTHONY SMITH, Defendant-Appellant.

First District (2nd Division)    No. 80-194

Opinion filed March 10, 1981.

Martin S. Agran, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant Anthony Smith was indicted for murder, armed robbery, burglary, and armed violence. Prior to trial, the State *nol-prossed* the burglary counts. A jury found defendant guilty of murder, armed robbery and armed violence, and he was sentenced to concurrent penitentiary terms of 60, 50, and 50 years, respectively. Defendant raises as issues on

appeal whether: the trial court erred in denying his motion to suppress certain statements; the court erred in preventing him from cross-examining a State's witness; his right against self-incrimination was violated; the court committed certain other evidentiary errors; the prosecutor's arguments denied defendant a fair trial; and section 5—5—3.2(b)(2) of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(b)(2)) is unconstitutionally vague.

A hearing was held on defendant's pretrial motion to suppress all statements and confessions made by him in which he claimed that they were made without his having been advised of his rights and as a result of mental and physical coercion. The evidence adduced at this hearing will be referred to in the body of the opinion.

At trial, evidence was presented from which the jury could have concluded that defendant and two companions, one, his brother Kenneth Smith, and the other, Larry Kemp, traveled to the north side of Chicago, ostensibly to visit defendant's mother, on October 11, 1978, in the early evening hours. At Kenmore and Rosemont, they saw a man, later to be robbed and murdered, enter an apartment building. Defendant took a gun from his brother and stated his intent to rob the victim. All three followed the victim into the apartment building and took the stairs to the second floor as the man rode the elevator to the same destination. Defendant approached to within two feet of the man, pointed the gun into the air, and demanded money. The victim took money from his pocket and gave it to defendant, who struck him on the head with the pistol, forced him into his apartment and there onto his knees. The victim begged defendant not to shoot him, at which time Kenneth Smith urged defendant to "shoot him, shoot him." Kemp said, "we done rob the man, let's go." They searched the apartment, looking for guns. Kemp walked between the victim and defendant. The gun in defendant's hand went off, a bullet entering Kemp's leg. Kemp hopped to the door, turned, and observed defendant point the pistol in a downward direction and fire it at the victim. Kemp then ran out of the building where he was joined by defendant and Kenneth Smith. They went to an alley where defendant told Kenneth Smith to stash the pistol, which was done. They then went to defendant's mother's home, where police were ultimately called and the trio arrested. The victim had been shot in the head and right side, and died a few hours later.

Defendant first contends that the court erred in denying his motion to suppress a statement made to assistant state's attorney Marcia Orr, as it was not made freely, voluntarily and without compulsion. He maintains that whether a confession has been obtained in violation of due process must be determined from all relevant circumstances, including the duration of defendant's confinement before confession, relentlessness of

interrogation, disregard of rudimentary necessities of life, deprivation of counsel, isolation from family or friends, deception, disregard of constitutional rights, promises of reward, physical coercion, the accused's age, education, emotional character and experience in criminal matters, citing *People v. Jackson* (1968), 41 Ill. 2d 102, 242 N.E.2d 160, and *People v. Price* (1962), 24 Ill. 2d 46, 179 N.E.2d 685. Defendant bases his claim of coercion upon evidence that at the time he made his statement to Orr he was 17 years of age; had been confined in the interrogation room for 9½ hours; was denied counsel; was refused an opportunity to make a telephone call; was denied contact with family and friends; was given neither food nor drink; was not allowed use of a restroom; was threatened and coerced, in that officers warned him of homosexual attack in the penitentiary; was threatened that his head would be knocked through a wall; and was told his friends had implicated him in the crime.

Defendant acknowledges that much of his testimony as to this alleged mistreatment was controverted by the State's evidence. Chicago Police Investigators Paul Roppel, Thomas Keane and Thomas Stevens were called by the State to testify at the suppression hearing. All agreed that defendant was not threatened or coerced in any way. Investigator Roppel stated he escorted defendant to the restroom; that defendant never requested use of the telephone; and that he did not ask for an attorney. Defendant himself admitted that he never asked for food, that Roppel brought him cigarettes at his request, and that at one point during this period he slept. These conflicts in the evidence, and issues regarding the credibility of witnesses, are properly resolved by the trier of fact. *People v. Glanton* (1975), 33 Ill. App. 3d 124, 140, 338 N.E.2d 30.

■■ ■ Defendant suggests, however, that the police testimony at the pretrial hearing was unreliable because of two contradictions therein: Investigator Roppel had testified that between 12:30 a.m. and 5:30 a.m. he entered defendant's room between five and 15 times, whereas Investigator Stevens stated that to his knowledge no one entered the room between those hours. Further, Roppel stated that at 5:30 a.m. Stevens advised defendant of his rights, which Stevens denied. These contradictions are not sufficiently significant to cast doubt upon police testimony as a whole, especially in light of Orr's testimony that defendant told her at about 6:30 a.m., during her interview with him, that he had not been threatened by police, nor given any promises by them. Moreover, even if Stevens had not told defendant of his rights, defendant admitted that Orr did so, and that he had understood them. Defendant was in custody for 9½ hours; however, such a period of time does not detract from the voluntary nature of a confession where, as here, there is no evidence that the interrogation was prolonged or intensive. (*People v. Sims* (1961), 21 Ill. 2d 425, 173 N.E.2d 494.) With regard to defendant having been informed

that his friends had inculpated him, it is not coercion to inform a defendant that a co-defendant has implicated him in a crime. (*People v. Gorham* (1978), 66 Ill. App. 3d 320, 384 N.E.2d 6.) The record amply supports the trial court's conclusion that defendant's statement was not the result of physical or psychological coercion and was not against the manifest weight of the evidence. *People v. Medina* (1978), 71 Ill. 2d 254, 375 N.E.2d 78.

■■ Defendant next assigns as error the fact that prior to Kemp's testimony, the court 'granted the State's motion *in limine* directing defense counsel to refrain from cross-examining Kemp about a statement made to him by Kenneth Smith, whose case had been severed for trial upon a defense request. While Kenneth Smith and Kemp were being transported in a patrol wagon, Smith allegedly stated that he had shot the victim in the head, which statement he repudiated after his arrest. Defendant argues that Kenneth Smith's alleged statement should have been admitted as an exception to the hearsay rule for statements against penal interest, citing *People v. Lettrich* (1952), 413 Ill. 172, 179, 108 N.E.2d 488, in which the supreme court recognized such an exception where justice so requires, and *Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038. In both *Lettrich* and *Chambers* the reviewing courts focused on the reliability of the circumstances surrounding the declarations. Explicitly in *Chambers*, and implicitly in *Lettrich*, declarations against penal interest critical to the defense were found to be admissible where they bore assurances of trustworthiness, or reliability. The statement at issue here was fatally unreliable because the declarant later denied firing the shots. In *People v. Taylor* (1976), 35 Ill. App. 3d 756, 759, 342 N.E.2d 436, testimony of a co-arrestee's confession was found to lack the "indicia of reliability present in *Chambers* and the compelling circumstances of *Lettrich*" where the declarant later repudiated the subject statement, and where the confession was inconsistent with known facts. The circumstances at bar differ from those in *Chambers* and *Lettrich*, in still another respect. Unlike the defendant in those cases, defendant here would not have been exonerated even had the declaration been admitted, since he would have remained culpable on a felony murder theory. (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)(3); *People v. Brown* (1979), 70 Ill. App. 3d 922, 388 N.E.2d 1253; *People v. Kirkpatrick* (1979), 70 Ill. App. 3d 166, 177, 387 N.E.2d 1284.) Defendant argues that since the court admitted into evidence and deemed reliable testimony of Kemp which contained other statements of Kenneth Smith, then certainly the subject statement is equally reliable. This argument ignores the fact that those statements to which defendant refers, such as "shoot him, shoot him," were not hearsay, as they were not offered for the truth of the assertions made. See McCormick, Evidence §289, at 687 (2d ed. 1972).

■■ Defendant next maintains that his fifth amendment right against self-

incrimination was violated in that, after revealing defendant's statement to her, Orr stated, "I asked him if he wanted to make a written statement but he said he didn't." He contends that an accused is within his rights in refusing to make a statement, and that such a refusal has no tendency to prove or disprove the charge against him, citing *People v. Rothe* (1934), 358 Ill. 52, 192 N.E. 777, and *People v. Lewerenz* (1962), 24 Ill. 2d 295, 181 N.E.2d 99. *Rothe* and *Lewerenz* are inapposite, however, since in neither case did the defendant first make an oral admission of guilt as in the present case. In *People v. Richardson* (1978), 61 Ill. App. 3d 718, 729, 377 N.E.2d 1235, a witness testified to the defendant's voluntary and damaging pretrial admissions. When he was asked if the defendant had said anything further, the witness responded, "I wanted him to sign a statement, but he just waved his hand." The court found no violation of that defendant's right against self-incrimination and that any possible error was cured by the trial court's instruction to the jury. Here, as in *Richardson*, defendant's silence was not the issue raised; rather, it was his refusal to sign a statement which would reduce his oral statement to writing. Further, any error which may have developed was cured when the court instructed the jury to disregard Orr's statement, as in *Richardson*.

■■ Defendant next contends that the court erred in allowing into evidence a photograph of the deceased's chest wound, arguing that the State failed to demonstrate a proper purpose for the introduction of the exhibit, citing *People v. Jackson* (1956), 9 Ill. 2d 484, 138 N.E.2d 528, *People v. Lindgren* (1979), 68 Ill. App. 3d 141, 386 N.E.2d 87, *aff'd* (1980), 79 Ill. 2d 129, 402 N.E.2d 238, and *People v. Landry* (1977), 54 Ill. App. 3d 159, 368 N.E.2d 1334, in which the admission of gruesome photographs were deemed prejudicial, serving only to inflame the jury. We disagree. In *People v. Foster* (1979), 76 Ill. 2d 365, 377, 392 N.E.2d 6, the court surveyed the law regarding the admission of photographs and concluded that "the 'strict requirement' of a 'proper purpose' articulated in *Jackson* has eroded to a large extent * * *," and that the prevailing standard, explicated in *People v. Speck* (1968), 41 Ill. 2d 177, 242 N.E.2d 208, *rev'd on other grounds* (1971), 403 U.S. 946, 29 L. Ed. 2d 855, 91 S. Ct. 2279, is that the photographs are admissible where relevant to establish a fact in issue. In the present case, the photograph was relevant in two respects. First, it corroborated the testimony of the occurrence witness, Kemp (see *People v. Speck*), as to the relative positions of defendant and the victim as defendant fired his gun. Second, it corroborated the testimony of the pathologist who described the chest wound. (See *People v. Lindgren* (1979), 79 Ill. 2d 141, 144.) Photographs are not cumulative because they corroborate and illustrate oral testimony on the same issues. *People v. Lindgren*; *People v. Henenberg* (1973), 55 Ill. 2d 5, 302 N.E.2d 27.

■■ Next, the defense asserts that the effect of various of the prosecutor's comments were so prejudicial as to have denied him a fair trial. He maintains that it was improper for the prosecutor to state in closing argument, "Every defendant, be he a thief, or be he a murderer, who has ever been convicted in the 200 years of this country, was proved guilty beyond a reasonable doubt * * *," since such a statement diminishes the State's burden of proof in the eyes of the jury. Defendant relies upon *People v. Martinez* (1979), 76 Ill. App. 3d 280, 395 N.E.2d 86, in which the prosecutor's statement that people throughout the United States are found guilty beyond a reasonable doubt every day of the week was deemed improper, and *People v. Hamilton* (1980), 80 Ill. App. 3d 794, 400 N.E.2d 599, wherein the court ruled improper (but held harmless) the prosecutor's statement that the burden of proof had been met in every prosecution in the nation. In both *Hamilton* and *Martinez*, the prosecutor's comments directly impugned the reasonable doubt standard more so than did the statement at bar, which was essentially a superfluous restatement of the standard. As it was contained in an unemphasized remark subsumed in the entirety of the prosecutor's arguments, the statement does not justify reversal.

■■ Next, defendant argues that it was improper for the prosecutor to argue that witness Orr "* * * has argued cases before the Illinois Supreme Court. She has argued cases before the Supreme Court of the United States. * * * She is the supervisor of more than 40 people. * * * She holds a position of honor and trust. She may someday wear the robe of a judge." A defense objection to this statement was sustained. Much of the statement paralleled Orr's own testimony of her then current position at the time she commenced testifying on direct examination. Defendant cites *People v. Bitakis* (1972), 8 Ill. App. 3d 103, 289 N.E.2d 256, and *People v. Valdery* (1978), 65 Ill. App. 3d 375, 381 N.E.2d 1217, for the principle that a prosecutor may not rely on matters not in evidence, nor place the integrity of the state's attorney's office behind the credibility of a witness. While in accord with this holding, we nevertheless find both cases to be distinguishable. In *Bitakis*, the prosecutor stated that he was not ready to jeopardize his reputation by putting a false witness on the stand. In *Valdery*, the prosecutor stated that in his mind the integrity of the witnesses have never been higher, and that he had never known people of such high integrity. Here, the prosecutor did not express his personal feelings, pledge his personal reputation, or lend the weight of his office to the credibility of the witness. Moreover, since the remarks complained of were apparently made in response to defense counsel's suggestion that Orr's testimony was not credible, defendant cannot now complain that the prosecutor's statement prejudiced him. (*People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 379 N.E.2d 847.) Such remarks

are not to be encouraged; however, under these circumstances, they do not constitute reversible error.

■■ Defendant further raises as error the fact that the prosecution was permitted to argue defendant did not produce Investigator Roppel (who was present during Orr's interview with defendant) to testify regarding a contradiction brought out on cross-examination between Orr's testimony (that defendant had stated he told Kenny to stash the gun) and her felony review memo (which reported defendant had stated he told Kemp to stash the gun). Defendant avers that argument was an improper comment on the failure of the defense to call a witness to the stand when that witness was equally accessible to both parties. (*People v. Munday* (1917), 280 Ill. 32, 117 N.E. 286; *People v. Rubin* (1937), 366 Ill. 195, 7 N.E.2d 890; *People v. Beller* (1977), 54 Ill. App. 3d 1053, 370 N.E.2d 575, *aff'd* (1979), 74 Ill. 2d 514, 386 N.E.2d 857.) Defendant correctly states that allowance of such an argument effectively shifted the burden of proof to him; however, while it may have been improper, the comment did not prejudice defendant. An impermissible comment on a defendant's failure to call a witness is not reversible error where the potential testimony is at best tangential to his defense. (*People v. Beller* (1977), 74 Ill. 2d 514, 526.) It cannot fairly be regarded otherwise here.

■■ Finally, defendant argues that section 5—5—3.1(b)(2) of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(b)(2)), pursuant to which defendant's sentence was extended, is unconstitutionally vague and standardless. That section provides that the court may consider as a reason for imposing an extended term the fact that a defendant had been convicted of a felony "* * * and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." The trial court made such a finding in the present case. Pretermitting the fact that this issue was not raised at trial and therefore stands waived (*People v. Trefonas* (1956), 9 Ill. 2d 92, 136 N.E.2d 817), we note that defendant offers only general constitutional arguments and does not indicate why the sentence was in this instance arbitrarily or capriciously imposed. No infirmity in the statute nor any error in the sentence appears.

For the foregoing reasons, defendant's conviction is affirmed.

Affirmed.

DOWNING and PERLIN, JJ., concur.