THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE GRIGSBY, Defendant-Appellant.

First District (2nd Division)   No. 80—3057

Opinion filed December 14, 1982.

James J. Doherty, Public Defender, of Chicago (Donna Hickstein-Foley, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Richard B. Levy, and Daniel E. Jordan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PERLIN delivered the opinion of the court:

Defendant George Grigsby was charged by information with 10 counts of armed robbery and eight counts of unlawful restraint. On October 30, 1980, a jury found defendant guilty of two counts of armed robbery and three counts of unlawful restraint. He was sentenced to the Illinois Department of Corrections for 16 years on each of the armed robbery convictions and three years on one conviction of unlawful restraint; all terms were to run concurrently. The trial court vacated the two remaining convictions of unlawful restraint.

Defendant appeals and contends that the trial court improperly denied his motion to suppress evidence allegedly derived from an illegal search and an illegal detention. Defendant also contends that he was denied a fair trial when the prosecutor made allegedly prejudicial comments during closing arguments. For the reasons hereinafter stated, we affirm.

The following is a summary of the significant facts derived from both the trial and the suppression hearing.

April 17, 1980, at approximately 10 a.m.:

Two men, one of whom was identified at trial as defendant, entered and robbed a liquor store at 1365 West Fullerton Avenue in Chicago. The owner, Frank Reed (Reed), gave defendant approximately $2350 and a gun which was kept in the store. After turning over the money and the gun, Reed was tied up by the robbers and made to lie down on the floor. The two robbers then picked Reed up and took him to his office in the rear of the store and tried to use his keys to open the safe. Being unsuccessful in opening the safe, the two robbers brought Reed back to the store area, put him down on the floor again and left the store.

Defendant's mother and cousin testified that defendant never left his apartment on April 17 until two hours after the Fullerton store robbery took place. Defendant's mother averred that defendant had a large amount of money in his possession on April 17.

Chicago Police Officer John Sullivan initially investigated the Fullerton store robbery immediately after the robbery's occurrence. At the liquor store, Officer Sullivan was told that one of the robbers had a dark complexion. None of the descriptions received by Sullivan included a reference to pimples or a pockmarked face.

April 18, 1980, at approximately 12:30 a.m.:

Chicago Police Officers Joseph Hartford (Hartford) and John Allanson were on patrol in the vicinity of Chicago Avenue and Sedgwick in Chicago when they observed a car with no license plates. They stopped the car which contained four occupants. Defendant got out of the car on the driver's side but told Officer Hartford that he (defendant) was not the driver of the car. Defendant, however, did correctly identify himself.[1] Officer Hartford then arrested defendant because he failed to produce a driver's license, there were no State license plates on the car, and there was no city vehicle sticker on the car. After searching defendant for weapons, Officers Hartford and Allanson placed defendant in the back seat of the patrol car. Once the officers had searched the other occupants of the car, the officers then without his consent, searched defendant's car and found approximately $600 in currency in the unlocked glove compartment. Defendant claimed the money belonged to him, so the officers gave him the money. Possession of the car was given to one of defendant's passengers.

The officers then took defendant to the 18th District police station for processing on the traffic violations. Following normal procedures, Officer Hartford made an identification check on defendant to determine if there were any outstanding warrants against him. He discovered that there was a traffic warrant outstanding against defendant with a $3,000 bond.

Between 12:30 a.m. and 1:30 a.m. on April 18, 1980:

Officer Hartford telephoned several "units" to see if there had been any recent robberies because he was suspicious about the large amount of money defendant claimed as his property. Officer Hartford called "Area 6 Robbery" and told Investigator Richard Cauble (Cauble) about the circumstances of defendant's arrest. Hartford described defendant as a "Male Negro, about 160, 170 pounds" with "a pock-

---

[1]Although the record on appeal does not reflect who in fact owned the car, at trial both the State and defendant treated defendant as the owner of the car.

marked face." He also told Investigator Cauble that when the police had checked out defendant's statement as to the source of the money, the statement appeared to be false.

After his conversation with Officer Hartford, Investigator Cauble checked the "Major Robbery Board" for any recent robberies where the assailant matched defendant's description. Noticing that there had been a robbery at 1365 West Fullerton and that defendant matched one of the robber's description, *i.e.*, "Male Negro; 25 to 30; 6 foot 1, 150 pounds; light complexion, pimples; mustache," Cauble went to the 18th District police station for further investigation.

April 18, 1980, at approximately 1:30 a.m.:

Officer Hartford asked his watch commander to fingerprint defendant for positive identification because defendant had no identification in his possession when arrested.

April 18, 1980, at approximately 2 a.m.:

Investigator Cauble arrived at the 18th District police station. He placed "hold papers" on defendant to keep him for a lineup that would take place as soon as the witnesses to the Fullerton store robbery became available. Defendant was given his *Miranda* warnings and questioned by Cauble as to the source of the money found in the glove compartment. Defendant claimed that the money came from two back paychecks issued by his employer, the Lake Shore Racket Ball Club (Racket Ball Club) and a bond refund check. Investigator Cauble was informed by the police, however, that the manager of the Racket Ball Club denied knowing defendant. Defendant claimed that he worked the day shift and that the police had talked to the night manager, a person with whom defendant was not acquainted.

April 18, 1980, at approximately 2:30 a.m.:

The results of the fingerprint check came in and positively identified defendant. Shortly thereafter he was also photographed by the police.

April 18, 1980, at approximately 11:30 p.m.:

The occurrence witnesses to the Fullerton store robbery positively identified defendant at a lineup at the 18th District police station. Following the lineup, Investigator Cauble told defendant that he had been so identified. Defendant then allegedly told Cauble that he would admit his participation in the robbery but would not name his accomplice. Defendant never gave any written statements to the police.

Prior to trial, defendant filed a motion to suppress all testimony about the money found in the glove compartment. The trial court found that the police had probable cause to stop defendant's car and denied the motion to suppress. The trial judge found it unusual that a

person would place $600 in the glove compartment of a car having no license plates. Defendant also moved to suppress the lineup identification and the alleged oral statements made by him to Investigator Cauble on the ground that such evidence was obtained through defendant's illegal detention by the police. The trial court noted that defendant's description and that of the robbery suspect referred to a tall man, thinner than average, with a pockmarked face. The court concluded that these were characteristics which could give Cauble probable cause to detain defendant and to further investigate the robbery. The court, therefore, denied the motion to suppress the lineup identification and the alleged oral statements made by defendant to Investigator Cauble.

## I

■ Defendant contends that his fourth amendment rights were violated by the seizure of his money from the glove compartment. As a general rule, a warrantless search is invalid under the fourth amendment and the Illinois Constitution unless the search is reasonable and comes within one of the narrow exceptions to the warrant requirement (*People v. Helm* (1981), 89 Ill. 2d 34, 36, 431 N.E.2d 1033). The reasonableness of a search is determined by the facts of each case (*People v. Seymour* (1981), 84 Ill. 2d 24, 35, 416 N.E.2d 1070). The prosecution has the burden of proving that a warrantless search or seizure is reasonable and that one of the exceptions apply. *People v. Eastin* (1972), 8 Ill. App. 3d 512, 519, 289 N.E.2d 673.

The United States Supreme Court has held that "in the case of a lawful custodial arrest, a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." (*United States v. Robinson* (1973), 414 U.S. 218, 235, 38 L. Ed. 2d 427, 441, 94 S. Ct. 467, 477.) In the instant case the validity of defendant's arrest appears to be uncontested on appeal. A search incident to a lawful custodial arrest extends to the person arrested and to the immediate surrounding area within his reach. *Chimel v. California* (1969), 395 U.S. 752, 763, 23 L. Ed. 2d 685, 694, 89 S. Ct. 2034, 2040.

Contrary to defendant's assertions, we believe that *New York v. Belton* (1981), 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860, is controlling. In *Belton,* the United States Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." (453 U.S. 454, 460, 69 L. Ed. 2d 768, 775, 101 S. Ct. 2860, 2864.) The court

expressly included a search of any containers found within the passenger compartment because "if the passenger compartment is within the reach of the arrestee, so also will containers in it be within [the arrestee's] reach." (453 U.S. 454, 460, 69 L. Ed. 2d 768, 775, 101 S. Ct. 2860, 2864.) The court in *Belton* specifically included a glove compartment as one such container that may be searched. (453 U.S. 454, 460 n.4, 69 L. Ed. 2d 768, 775 n.4, 101 S. Ct. 2860, 2864 n.4.) In the case at bar, since defendant was lawfully arrested and his car was searched contemporaneously with the arrest, we find that the trial court did not err when it denied the motion to suppress evidence of the money in question.

## II

Defendant contends that the police illegally detained him for 21 hours after he was positively identified and bond had been set on the traffic violations and the traffic warrants. In *Dunaway v. New York* (1979), 442 U.S. 200, 216, 60 L. Ed. 2d 824, 838, 99 S. Ct. 2248, 2258, the United States Supreme Court held that a person's fourth amendment rights are violated when the police detain a suspect for custodial interrogation where there is no probable cause for that detention. In the instant case, defendant argues that an illegal detention occurred when the police, on a "mere suspicion," held him after he had been processed on his traffic violations. Defendant also claims that his right to post bond had been violated since he had sufficient funds to post bond but was not allowed to do so. The defendant therefore contends that the trial court erred in denying his motion to suppress evidence of the lineup and the alleged confession because they were derived from an illegal detention.

In rebuttal, the State argues that Investigator Cauble had probable cause to detain defendant until the lineup occurred. Probable cause exists:

> "when the facts and circumstances within the officer's knowledge would lead a man of reasonable caution to believe that an offense has been committed and that the person apprehended has committed the offense. [Citations.] In determining whether probable cause existed, this court has emphasized that the totality of facts and circumstances known to the officer when the arrest was made must be considered." (*People v. Gabbard* (1979), 78 Ill. 2d 88, 101, 398 N.E.2d 574 (Underwood, J., concurring in part and dissenting in part).)

In the instant case, it is critical to determine whether probable cause existed at 2 a.m. on April 18, 1980, because that is when Investigator

Cauble decided to detain defendant until a lineup could be arranged.

■ At the time Cauble decided to detain defendant, Cauble had the following facts upon which to base probable cause. The police had stopped a car without license plates late at night (12:30 a.m.). Although defendant correctly identified himself, he got out of the car on the driver's side but claimed he was not driving the car. Inside the glove compartment, the police found approximately $600 in currency, an unusual item to store in one's glove compartment. Defendant's explanation as to the source of the money appeared to be false. The police then decided to see if the defendant matched the description of any robbery suspects and found that he matched the height, weight and "pimples" description of a suspect in a robbery that took place less than 24 hours before; defendant is a tall, thin male with a pock-marked face.

The trial court's decision on a motion to suppress will not be disturbed unless the decision is manifestly erroneous. (*People v. Clay* (1973), 55 Ill. 2d 501, 505, 304 N.E.2d 280.) Here, the description of the robbery suspect used by Investigator Cauble was not so general that it would apply to many people. Moreover, there is little likelihood that more than one person would not only match the description but would also be found in possession of a large amount of money from an unexplained source. While each fact may not have been in itself enough to establish probable cause, we conclude that the totality of all pertinent facts did provide the police with probable cause to detain defendant.

### III

■ Finally, defendant contends that he was denied a fair trial when the prosecutor allegedly made prejudicial comments during closing argument. First, defendant contends that several remarks of the prosecutor implied that defendant was capable of murder and that if he was set free by the jury he might kill someone. One such remark objected to by defendant occurred when the prosecutor said:

> "Now, [defense counsel] told you several times about the burden of proof, reasonable doubt. The Judge will instruct you as to that. It's the same burden that is in every criminal case in this courtroom in this building and in every court building in this county and in this state and in this country for the past two hundred years. *Every murderer, armed robber —*
>
> DEFENSE COUNSEL: Objection.
>
> PROSECUTOR: — (Continuing) *rapist, burglar and thief who is in the penitentiary has been convicted beyond a reason-*

*able doubt. There is nothing magical about it.*

THE COURT: Overruled." (Emphasis added.)

Defendant contends that these words implied to the jury that he was capable of murder, but the defendant appears to be taking the prosecutor's comments out of context. We do not read these comments as suggesting that defendant was capable of murder; rather, the prosecutor was merely restating the standard of proof, which is permissible in a criminal case. *People v. Smith* (1981), 93 Ill. App. 3d 1133, 1139, 418 N.E.2d 172.

■ Defendant also alleges that the following remarks suggested he was capable of murder:

"PROSECUTOR: We are talking about letting that man walk out the front door. That's what [defense counsel] wants you to do, let him walk out that front door and God knows what he will do next.

\* \* \*

PROSECUTOR: He gets his money by sticking shotguns in the faces of people. That's how he does it. And if they don't give up the money, God knows what happens."

However, these comments appear to be directed toward the seriousness of the offense. Such comments by the prosecutor are not improper if they refer to the evidence and the inferences drawn therefrom. *People v. Trimble* (1975), 27 Ill. App. 3d 353, 360, 326 N.E.2d 437.

■ Defendant further contends that the prosecutor implied to the jury that defendant was capable of murder when the prosecutor stated:

"\* \* \* He decided Frank Reed wasn't moving fast enough, wasn't getting the money fast enough or Allen Michalski didn't bend down the right way and pulled the trigger and blew their heads off like he said he would —

THE COURT: Objection sustained to that. There is no need for that speculation.

DEFENSE COUNSEL: Ask it be stricken."

Our review of the record confirms that defendant did not, in fact, make the entire statement attributed to him by the prosecutor. The prosecutor's remark, however, was an isolated one which the trial judge promptly cured by sustaining the objection. The prompt sustaining of an objection to an improper remark and instructing the jury to disregard such a remark will usually cure any prejudice to the defendant which may result. (*People v. Baptist* (1979), 76 Ill. 2d 19, 30, 389 N.E.2d 1200.) Therefore, the defendant does not appear to have been

substantially prejudiced by this remark.

■ Defendant also contends that the prosecutor implied that the State's witnesses were more credible than defendant's witnesses when the prosecutor speculated as to why Investigator Cauble would risk his 13 year career by "lying" just to "get" defendant or that an assistant State's Attorney would go through college and law school just to join a conspiracy against the defendant. Defendant argues that this implication that his witnesses were less credible than the State's witnesses created an unfair advantage for the State which was so prejudicial that defendant was denied a fair trial. (*People v. Valdery* (1978), 65 Ill. App. 3d 375, 378, 381 N.E.2d 1217.) We do not read these comments as suggesting that the State's witnesses are more credible than defendant's witnesses. Rather, these comments appear designed to support the prosecutor's arguments as to why the State's witnesses would have no motive to lie.

■ Finally, defendant contends that the prosecutor misstated the evidence and improperly commented on defendant's failure to testify:

"PROSECUTOR: *** [T]here is no reason for any witness in this case on behalf of the People to lie. They don't even know him. They saw him for half an hour and they saw him with a shotgun.

The evidence in this case came from the witness stand and what you heard, what you heard *except for a bogus alibi* —

DEFENSE COUNSEL: Objection.

PROSECUTOR: — (Continuing) which is rebutted.

THE COURT: Overruled.

PROSECUTOR: Uncontradicted." (Emphasis added.)

In *People v. Escobar* (1979), 77 Ill. App. 3d 169, 178, 395 N.E.2d 1028, the appellate court held that "[w]here the State's case is not in fact *unchallenged,* the suggestion that it is becomes suspect; it is not 'an accurate summary of the evidence' [citation]. The only reasonable point to the comment is the defendant's silence." (Emphasis added.) In the instant case, defendant argues that the prosecutor's reference to the State's case as "uncontradicted" and "unrebutted" is inaccurate. Evidence was, in fact, offered to contradict the State's case. Defendant claims that the prosecutor's unwarranted comment improperly draws attention to his failure to testify.

We consider the case at bar distinguishable from *Escobar.* In *Escobar,* the prosecutor flatly characterized the State's evidence as uncontroverted when, in fact, there was contrary evidence presented by the defendant. Here, however, the prosecutor stated that the State's evidence was "uncontroverted" and "unrebutted" *except* for a "bogus

alibi." Thus, the prosecutor did acknowledge that there was evidence contrary to the State's case but characterized such evidence as not credible. In sum, the prosecutor's closing argument does not appear to have substantially prejudiced defendant and, in our opinion, he was not denied a fair trial.

For the foregoing reasons, the defendant's convictions are affirmed.

Affirmed.

DOWNING and HARTMAN, JJ., concur.