(No. 35758.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DONALD BANKS, Plaintiff in Error.

*Opinion filed November 30, 1962.*

THOMAS W. MCNAMARA, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and RUDOLPH L. JANEGA and M. ROBERT OSTROW, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, Donald Banks, was convicted of rape after a jury trial in the criminal court of Cook County and sentenced to life imprisonment in the penitentiary. On this writ of error he asserts that an instruction to the jury and the argument of the prosecutor relating to his alleged identification were erroneous and prejudicial; that his alleged confession was erroneously admitted in evidence, and

allegedly inflammatory remarks of the prosecutor deprived him of a fair trial.

In the early morning of February 4, 1956, at about 4:00 A.M., the 15-year-old prosecutrix and her mother were awakened by a man sitting on the edge of the bed which they shared in their duplex apartment in the Altgeld Gardens housing project in Chicago. The man demanded money, and when the mother replied that she had none, he struck her on the forehead with a hard object. She then told him where the money was, but instead of taking it, he disrobed both women. He then committed an unnatural sex act upon the mother and had sexual intercourse with her daughter. He was preparing to have intercourse with the mother when there was a knock at the front door and Mr. Smith, a neighbor, called the mother's name. Smith opened the door and turned on the light switch at the bottom of the stairs, which controlled the light at the top of the stairs outside the bedroom. The intruder then ran down the stairs, past Smith, and out of the building. As he was fleeing down the stairs, the mother observed his back from the landing above.

Approximately four months later, on May 30, 1956, at 2:15 A.M., the defendant was arrested in his home, which was also in the housing project, "down the street" from that of the prosecutrix. At the police station he was questioned about this offense, among other things. He told the officers that he didn't know anything about the crime, and after an hour and a half or two hours of questioning he was placed in a cell. He testified that "one police officer said he ought to say I tried to run and shoot me." At about 1:15 A.M. on May 31, a line-up was held, at which the prosecutrix and her mother were present. Six or seven Negroes, including the defendant, all of whom were known to both women, were in the line-up. The mother testified that the defendant was of the same build as the man who had been in her apartment on February 4. Her daughter testified that each of the men said something and that the voice of the

defendant "sounded like" the voice of the man who had raped her.

Questioning of the defendant was resumed at approximately 9:00 A.M. on May 31, at Central Police Headquarters. After an hour of interrogation he orally acknowledged the commission of the crime. He was then taken to the Criminal Courts Building, where at about 1:30 P.M. a written statement was taken by an assistant State's Attorney and signed by the defendant. The defendant testified that he confessed because his life had been threatened, because he was unable to get a job on account of his bad conduct discharge from the army, and was down and out, depressed, and didn't care what happened to him. The written confession and testimony as to the oral confession were admitted in evidence over the defendant's objection.

The instruction regarding identification of which the defendant complains is as follows: "The Court instructs the jury that in determining whether or not the defendant has been identified as the person who committed the offense charged in the indictment if any such offense was committed you must consider all the testimony in the case, both that for the prosecution and that for the defendant; considering the means of identification; the circumstances under which he was identified; the opportunity for identifying the said defendant; the description of his apparel as stated by the witnesses; and the probabilities or improbabilities that it was the defendant—and, if after so judging and weighing the testimony, you are satisfied beyond all reasonable doubt that the defendant has been correctly identified as the person who committed the offense as charged in the indictment, it is your duty to find the defendant guilty." In the view we take of this case, it is necessary only to consider the defendant's contention that there was no basis in the evidence to warrant the giving of this instruction, and that it operated to his prejudice. We do not, therefore, discuss its content. Cf. *People* v. *LeMar*, 358 Ill. 58, 63.

Only three people—the prosecutrix, her mother, and the neighbor, Smith,—could have identified the intruder. Smith, who seems to have had the best opportunity to see him, was not called as a witness. Both women testified that they were unable to see the intruder's face, but that he had a mustache. The mother testified that the intruder was a short man with broad shoulders, and that judging from his voice he was a Negro between 20 and 30 years of age. Both women had known the defendant, who was their neighbor, for many years. The daughter testified that she had known him for seven or eight years and that she had spoken to him on many occasions prior to February 4, 1956. She saw him around the neighborhood several times between the date of the crime and the date of his arrest. Her mother testified that the defendant had spoken to her in a neighborhood drug store two days after the crime. She did not at any time associate defendant's voice with that of the attacker. Her daughter did not do so until the line-up, four months after the crime. More significant, however, is the fact that the prosecutrix neither stated nor testified that the defendant's voice was that of the man who attacked her, or even that she thought it was. In her testimony she did no more than to assent to the prosecutor's suggestion that the voice of one of the men in the line-up, the defendant, "sounded like" the voice of the man who had attacked her.

It is not always easy to determine whether there is sufficient evidence to warrant an instruction on a particular issue, and in many instances neither party will be prejudiced if the issue is submitted to the jury. The danger in a case such as this, however, is the same danger that has caused this court to reverse convictions because of instructions on abstract propositions of law. It is the danger that the jury may be misled into believing that in the opinion of the court the evidence would support a finding that the facts exist upon which the proposition of law is based. (*People* v. *Corbishly,* 327 Ill. 312.) That danger was compounded in

this case when one of the assistant State's Attorneys, during the course of his argument, incorrectly stated to the jury that the mother had testified that the voice of the intruder was the voice of the defendant, and the other assistant stated that both the mother and the daughter had said that it was the same voice.

The trial judge accurately described the state of the evidence when he said to the prosecutors, during the conference on instructions, "In the absence of a confession here you certainly would have no case at all on the identification, if it can be called an identification." Yet the jurors were invited, by the erroneous arguments of the prosecutors and by the challenged instruction, to find that the defendant had been identified, and they were told that if they believed that he had been correctly identified it was their duty to find him guilty. The evidence which was introduced on the issue of identification was insufficient to warrant the instruction. (Cf. *People* v. *Arthur*, 314 Ill. 296.) The error was prejudicial to the defendant, for under other instructions the jury might have rejected the confession and relied solely on the identification for its verdict. The conviction must therefore be reversed, and the cause remanded for a new trial.

Since the issue of the admissibility of the confession will probably recur upon a retrial, we reach defendant's contention that the State failed to establish its voluntariness. This contention is based upon the failure of the prosecution to produce all material witnesses to the alleged threat made at the police station, and upon other circumstances surrounding his confession which are said to violate his rights under the State and Federal constitutions. As to the first ground, it is sufficient to note that the record is not clear as to whether the two police officers who did not testify were in fact present when the threat was allegedly made. This ambiguity can be resolved at a new trial, and the missing officers can be produced, if necessary. It is not now advisable to evaluate

the second ground of attack on the confession, for whether the defendant was or was not threatened is essential to a consideration of the overall voluntary character of the confession. Until that question is resolved there could only be a contingent evaluation of the other circumstances.

The prosecutors' comments in their arguments to the jury are unlikely to recur, and there is no need to pass on their propriety.

The judgment of the criminal court of Cook County is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*